COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Bray and Bumgardner
Argued at Chesapeake, Virginia


CATHERINE A. DIMAURO

v.    Record No. 1533-99-1

VIRGINIA BEACH DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE RUDOLPH BUMGARDNER, III
APRIL 11, 2000

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Alan E. Rosenblatt, Judge

Peter J. Jankell for appellant.

Nianza E. Wallace II, Assistant City Attorney
(Leslie L. Lilley, City Attorney, on brief),
for appellee.


In February 1999, the juvenile and domestic relations district court terminated Catherine A. DiMauro's residual parental rights to two of her children, eight-year-old Ronald and twelve-year-old Amelia. After a trial de novo, the circuit court terminated the mother's residual parental rights on August 3, 1999. The mother argues the trial court erred because (1) she had remedied the conditions that led to the children's foster care placement, and (2) she had made substantial progress toward, or satisfied all the conditions in, the foster care plan. For the following reasons, we affirm.

---

        * Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

DSS began providing services to the DiMauro family in April 1997 based upon allegations that the husband was abusing the parties' fifteen-year-old son, Roberto. On June 16, 1997, the juvenile and domestic relations district court granted DSS an emergency removal order for Ronald and Amelia after the mother spent the night on the street with Ronald. The mother lacked the necessary resources to provide the children with shelter, food or protection.

On September 15, 1997, DSS filed a foster care plan with the goal of returning the children to the parents. This plan required the mother to cooperate with DSS, attend individual and family therapy to address family violence issues, undergo a psychological evaluation, complete treatment and medications as prescribed, participate in weekly supervised visitation, obtain a verifiable means of financial support, and provide the children a safe home free of violence.

On November 4, 1997, Dr. Ellen Kveton evaluated the mother's parenting capacity and ability to protect her children. She recommended individual therapy, a psychiatric consultation to determine whether medication was required for depression, parenting classes, and a psychological evaluation. Joanne Glass, a licensed clinical social worker, evaluated the mother's level of denial of her nineteen year history of domestic violence and its impact on the children. By letter dated December 2, 1997, Glass recommended the mother participate in

-

long term individual therapy, a battered women's support group, family therapy with the children, parenting classes, and treatment with anti-depressant medication.  The mother was obligated to comply with these recommendations as part of DSS's foster care plan.

Starting in September 1997, the mother repeatedly violated visitation rules by trying to find the location of the children's school and its telephone number from Amelia.  The mother also violated visitation by urging Amelia to tell the court that she wanted to live with her mother and to deny any child abuse she had experienced.  In December 1997, DSS ceased supervising the visits and arranged for visitation to coincide with the mother's family counseling with the children.

In therapy with Dr. Jane Hollingsworth, Amelia revealed that her two older brothers sexually abused her.[1]  The mother denied such abuse occurred and then denied calling her daughter a liar.  In March 1998, Dr. Hollingsworth recommended that the children have no contact with the mother until she took the necessary steps to ensure their emotional and physical safety. Dr. Hollingsworth terminated the mother's visitation in April 1998.

---

[1] On August 25, 1998, Joseph DiMauro was convicted of four counts of forcible sodomy, three counts of aggravated sexual battery, and one count of object sexual penetration all involving Amelia and sentenced to 65 years with all but twenty suspended.

In addition to the mother's noncompliance with required visitation, she violated other terms of DSS's foster care plan. The mother did not attend a support group for battered women, follow through with recommended individual counseling and prescribed medication, secure a reliable source of income, and obtain safe housing for the children. As a result, DSS filed a new foster care plan with the goal of terminating the mother's residual parental rights on June 8, 1998. The plan noted that the mother "has shown no motivation to resolve her financial hardships other than asking for assistance."

In September 1998, the mother moved to the state of Washington. She participated in a support group for battered women and attended a group for parents of sexually abused children. She lives in transitional housing and receives financial assistance. In November 1998, the mother completed a parenting class, and in May 1999 she became a certified caregiver to the elderly. She participated in five individual counseling sessions and divorced her abusive husband on April 7, 1999. The mother obtained part-time employment at McDonald's and in June 1999 applied for government housing, but is eligible only if she regains custody of her children.

At the July 23, 1999 hearing, the trial court noted that the mother allowed the children "to live in an extremely dangerous environment," failed to provide them with a safe home, continually sided with the perpetrators who abused them, and

-

repeatedly ignored DSS's recommendations.  By order entered August 3, 1999, the court found by clear and convincing evidence that termination of the mother's parental rights was in the children's best interest under Code § 16.1-283(C)(2) and that "the children have waited long enough to have a future."

The mother argues that since September 1998 she has substantially remedied the conditions that led to the children's foster care placement and has made substantial progress toward the conditions in DSS's September 1997 plan.

Residual parental rights may be terminated if it is in the children's best interest and the parent has not remedied substantially the conditions that led to their foster care placement within one year of their placement.  See Code § 16.1-283(C)(2).  The children's best interest is the paramount concern.  "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted).  Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.  See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

-

The mother took no affirmative steps until one year after the children's placement in foster care when DSS filed its petition for termination. The evidence showed that despite DSS's assistance, the mother failed to participate in individual counseling, refused to follow through with recommendations made by professionals working with her, and failed to secure stable employment or safe housing for herself let alone her children. Additionally, the mother's actions resulted in the termination of her visitation with the children. Credible evidence supports the trial court's finding that the mother failed to remedy within one year of the children's placement in foster care the conditions that led to that placement.

The mother has not established that she made substantial progress in remedying the conditions since moving to Washington in September 1998. While her actions are commendable, they came too late. Dr. Kveton testified that the mother required a minimum of one year of individual therapy to address the "psychological factors, emotional concerns, and personality factors" that prevented her from being able to protect her children from abuse. Joanne Glass and Dr. Hollingsworth both estimated that the mother needed a minimum of two years of individual therapy. Dr. Hollingsworth also indicated that the children needed at least a year of family therapy with the mother before reunification. Moreover, the mother worked for McDonald's for only three months and had no stable home unless

-

the children were returned to her.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We conclude there is clear and convincing evidence to support the trial court's finding that the mother was unable or unwilling to remedy the conditions that led to the children's foster care placement within one year from their placement pursuant to Code § 16.1-283(C)(2).  Nor has she shown good cause for her failure or inability to do so.

Accordingly, we affirm the trial court's decision.

Affirmed.

-