COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Kelsey and Senior Judge Hodges


K. H.
                                              MEMORANDUM OPINION[*]
v.        Record No. 1800-03-1                     PER CURIAM
                                                FEBRUARY 3, 2004
NEWPORT NEWS DEPARTMENT OF
 SOCIAL SERVICES


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        C. Peter Tench, Judge

        (Kevin M. Diamonstein; Patton, Wornom, Hatten & Diamonstein,
        L.C., on brief), for appellant.

        (Kim Van Horn Gutterman, Assistant City Attorney, on brief), for
        appellee.


        K.H. (mother) appeals a decision of the trial court terminating her parental rights to her

seven children pursuant to Code §§ 16.1-283(C) and (E).  On appeal, mother contends the

evidence was insufficient to support the termination.  Upon reviewing the record and briefs of

the parties, we affirm the decisions of the trial court.  See Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).


        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence proved that in January 2000, the Newport News Department of Social Services (the Department) removed seven of her children[1] from her custody because she had failed to protect them from years of sexual abuse by her husband (father), and because she neglected their physical care.

Father repeatedly beat and raped mother throughout their ten-year marriage. Mother was aware that father was sexually abusing at least three of her children but failed to report the incidents or protect them from father's violence. Mother testified that on December 19, 1999, father "told [her] he was going to rape [her] daughter," then ten years old. Mother protested but then left the room and "fell asleep." Father raped the child, and two days later mother reported the incident to the Department. Father was arrested and is currently serving a life sentence for raping and sodomizing that child.

Because father was in custody and away from the family, the Department did not immediately remove the children from mother's care. Social worker Linda Massengill testified that over the following weeks, mother's ability to supervise and care for the children "greatly deteriorated." She indicated the children were dirty and had food in their hair and dirt on their arms and faces. The children were not attending school. Mother explained to the social worker that "it was hard to get the children up [for school] because they had been up . . . [until] three or four o'clock in the morning." Mother's oldest daughter, the victim of the December 1999 rape, had "orchestrated most of the organization in the home," as mother was unable to parent her children.

The Department developed a foster care plan with the initial goal of return home. The plan required mother to maintain suitable housing and financial support, through employment or otherwise. She was also required to maintain contact with her children. She needed to continue

---

[1] Mother and father have seven children, all of whom the Department removed from mother's care. Mother has another son from a different father who was not living with mother at the time of the children's removal and is not a subject of this action.

individual therapy sessions and develop an understanding of the possible behaviors her children may exhibit as a result of their sexual abuse. Mother needed to continue parenting training, develop a safety plan, and demonstrate an ability to protect her children. Massengill explained that before the children could return to mother's home, mother "was to have in place a consistent family schedule, bath times, meal times, those kinds of things."

Dr. J. Patrick Dorgan, mother's therapist, noted mother "definitely made progress," but that as of May 2002, she was still not ready to parent her children. Dorgan concluded that as of May 2002, mother would need at least eighteen more months before she would be able to regain custody of the children. Based upon the children's extended stay in foster care combined with mother's need for "a lot of psychological work," the Department moved to terminate mother's residual parental rights and place the children for adoption.

During the time mother's children were in foster care, D.P., her oldest child from a previous relationship, moved back in with mother. Dorgan and the Department explained to mother that if she could learn how to parent D.P., her other children could return home. However, mother proved incapable of parenting D.P. D.P. underwent a psychosexual evaluation because of the extensive sexual abuse he had suffered. The Department arranged individual counseling for D.P. with Emily Eanes. Eanes explained D.P. was at high risk to become a sexual offender based upon his history. Eanes stressed to mother the importance of D.P. continuing his therapy but mother failed to ensure that D.P. attended the sessions, and D.P. stopped seeing Eanes. Mother was unable to supervise D.P., who came and went as he pleased and did not inform mother of his whereabouts. Eanes testified mother had failed to meet D.P.'s medical, emotional and other parental needs.

Although mother completed parenting training, she was unable to apply the principles she learned during supervised home visits with the seven children in foster care. She could not resolve conflicts between the children and could not determine how to protect them. As of the time of the

trial, mother had not addressed "the developmental needs of her children, the task of a parent with sexually abused children, how you protect children." Dorgan concluded that if someone was hurting one of her children, mother would be unlikely to call the police, a doctor, or an ambulance. In short, she had failed to progress to the extent that she could provide her children with a safe environment suited to their heightened needs as sexual abuse victims.

## ANALYSIS

Mother argues the Department failed to establish that she did not substantially remedy the conditions which led to the children's foster care placement.[2]

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, (1) that the termination is in the best interests of the child, (2) that "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) that, despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."

We are mindful of the principle that "[t]he termination of residual parental rights is a grave, drastic and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), but we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).

---

[2] Although her parental rights to two of her children were terminated pursuant to Code § 16.1-283(C)(2) and Code § 16.1-283(E), mother challenges only the termination of her rights under subsection (C)(2).

The Department proved by clear and convincing evidence that mother, without good cause, failed "to substantially remedy" the conditions "which led to or required continuation of the child's foster care placement" within a reasonable period of time.

The children entered foster care because mother was unable to protect them from abuse and provide them with a safe environment. Three and one half years after their placement in foster care, mother was still unable to provide for her children. The evidence proved she had failed to progress to the point that she could protect her children from harm. Through her poor parenting of D.P. and the results of her supervised visits, mother demonstrated that she was not prepared to be reunited with the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Despite her progress in therapy and parenting classes, mother has been unable to apply the principles she has learned in day-to-day situations. "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted). The record supports the trial court's finding that the Department presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and establishing that termination of mother's parental rights is in the children's best interests.

Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

Affirmed.