COURT OF APPEALS OF VIRGINIA

Present:   Judges Bumgardner, Kelsey and Senior Judge Hodges


HERMAN BUTLER

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0131-05-1                           PER CURIAM
                                                         JUNE 14, 2005
CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

(Lawrence A. Martin; Coyle, Martin & Blackwell, on brief), for
appellant.

(A. Paul Burton, City Attorney; Lesa J. Yeatts, Deputy City
Attorney; William G. Broaddus; Tennille J. Checkovich; Thomas A.
Burcher, Guardian *ad litem* for the infant children; McGuireWoods
LLP, on brief), for appellee.


Herman Butler appeals the trial court's decision terminating his residual parental right to his

two minor children pursuant to Code § 16.1-283(C)(2).  Butler argues he maintained contact with

the Department of Social Services (DSS), maintained employment and housing for four years while

DSS assisted the children's mother, and completed the majority of requirements DSS assigned to

him.  Upon reviewing the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

proved that in June of 1996 DSS determined that domestic violence between Butler and his wife was threatening the well-being of the children by fostering a dangerous environment and subjecting the children to emotional abuse, and the court entered a protective order granting temporary custody of the children to Ms. Butler. In June of 1996, DSS provided Butler and Ms. Butler services from the Hampton Family Assessment and Planning Team and Lutheran Family Services. On May 14, 1997, a court entered an order awarding custody of the children to DSS due to several altercations involving Butler and Ms. Butler. The care plan's initial goal was to return to parent. Butler was required to maintain visitation with the children, demonstrate the ability to appropriately supervise the children, obtain housing appropriate for the children, maintain employment, complete an anger management group therapy, and follow any recommendations from the therapy.

In a November 6, 1997 letter, Butler requested that DSS give custody of the children to Ms. Butler because he was incarcerated. Butler also requested that the children remain in foster care until one of the natural parents could care for them. DSS then focused its efforts in assisting Ms. Butler, but DSS continued to pursue a goal of return to home for both parents. The foster care plans submitted in March and October of 1998 and in April of 1999 contained the same requirements for Butler that were in the initial plan.

While the care plans were in effect, Butler maintained bi-weekly visitation with the children when he was not incarcerated. However, he did not have a permanent place to live, was unemployed, and missed seven of the eleven anger management sessions. When the foster care plan was reviewed on September 28, 1998, Butler had not completed anger management therapy, had missed a scheduled visit on August 19, 1998, and had not provided documentation of employment or of his housing. When a social worker employed by DSS informed Butler that his

- 2 -

next scheduled visit would be on September 2, 1998, he raised his voice at the worker and threatened to harm her. A few days later, Butler repeated the threats to the worker.

When the court reviewed the foster care plan on March 31, 1999, Butler had not visited the children since November 1998 and he had not verified his address or employment. Despite DSS's warnings to the contrary, Ms. Butler permitted Butler to visit the children unsupervised during one of her weekend visits with the children. During this visit, the children witnessed a physical altercation between Ms. Butler, Butler, and Butler's pregnant girlfriend. DSS then suspended all visitation with the parents, and during a review of the care plan on August 27, 1999, DSS changed the goal to adoption. In August 1999, appellant was again incarcerated.

In July 2000, DSS was unaware of Butler's whereabouts, but learned he had received a suspended jail term for assault and battery on a police officer. On October 31, 2000, DSS met with Butler regarding visitation, requested that he obtain a psychological evaluation, and provide the results to the agency before visitation could be reinstated. Since the goal in the care plan remained adoption, no additional requirements were assigned to Butler. In August 2001, the court denied DSS's request to terminate Butler's residual parental rights. The court ordered DSS to provide visitation to Butler and Ms. Butler separately and to determine the most appropriate parent to achieve reunification with the children. At that time, DSS was working with Ms. Butler to return the children to her due to Butler's living arrangements. On December 17, 2001, DSS hand-delivered a letter to Butler outlining the goals he needed to achieve for reunification with his children. The goals were consistent with the goals of the initial care plan.

At a permanency planning hearing on September 4, 2002, the goal of the care plan was to return the children to Butler because Ms. Butler had disappeared.[1] DSS offered to assist Butler with obtaining appropriate housing, but he declined the assistance. At a permanency planning

---

[1] Ms. Butler's residual parental rights were terminated on July 3, 2003.

hearing on February 19, 2003, the goal of the plan remained return to parent. The plan required Butler to secure and maintain adequate housing for the children, maintain visitation, cooperate with DSS, maintain employment, participate in the therapy offered by Lutheran Family Services, and demonstrate the ability to meet the children's safety, developmental, and medical needs. At the permanency planning hearing on August 6, 2003, the evidence showed Butler failed to maintain adequate housing for the children, he failed to obtain permanent employment, he resisted the therapy offered by Lutheran Family Services, he refused to acknowledge DSS's guidance regarding the proper methods of disciplining the children, and he had argumentative outbursts with the social worker. The goal of the care plan was changed to adoption.

At the time of the termination hearing, appellant was incarcerated. He testified he hoped to obtain housing and employment within a reasonable time after he was released from incarceration. Appellant admitted he had been incarcerated four times since the children entered foster care. Appellant agreed that his residence prior to being incarcerated was an inadequate residence for the children.

At the time of the termination hearing, except for seven months, Butler's eleven-year-old daughter had resided with the same foster parent since the May 1997 placement. Butler's ten-year-old son resided in a specialized foster home, needed constant supervision, demonstrated features of Attention Deficit Hyperactivity Disorder, Post-Traumatic Stress Disorder, and Bipolar Disorder. The child also received in-home psychiatric services for negative behaviors tied to witnessing domestic violence and stress from unsuccessful attempts to reunite him with his biological family.

ANALYSIS

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (a) the termination is in the best interests of the child, (b) "reasonable and appropriate" services have

been offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and (c) despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

Clear and convincing evidence proved Butler failed to remedy the conditions that led to the placement of the children into foster care. Although DSS initially focused its efforts on Ms. Butler, the initial care plan of 1997 required Butler to meet certain goals to be reunited with his children. In 1997, while incarcerated, Butler requested that DSS give custody of the children to Ms. Butler and that the children remain in foster care until one of the natural parents could care for them. After Ms. Butler disappeared, the goal at the September 4, 2002 planning hearing was to return the children to Butler. Butler refused DSS's offer to assist him with obtaining appropriate housing. Butler's visitation with his children was interrupted by his incarceration, and was suspended at one point due to the children witnessing a domestic violence incident. Butler failed to obtain adequate housing and permanent employment. He also refused the therapeutic recommendations offered by Lutheran Family Services, and he failed to demonstrate any ability to meet the children's safety, developmental, and medical needs, especially the specialized needs of his son. At the time of the termination hearing, appellant was again incarcerated. Except for seven months, Butler's daughter resided with the same foster parent since 1997, and his son was in specialized foster care to meet his many needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even

if, a parent will be capable of resuming his [or her] responsibilities." <u>Kaywood v. Dep't of Soc.</u>

<u>Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2).  Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>