COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


BENJAMIN ABBITT

MEMORANDUM OPINION[*]

v.        Record No. 1202-06-3          PER CURIAM
                                        OCTOBER 31, 2006

LYNCHBURG DIVISION OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

(Mark B. Arthur; Fralin, Feinman, Coates & Kinnier, P.C., on brief),
for appellant.  Appellant submitting on brief.

(Joyce M. Coleman, Senior Assistant City Attorney; Wanda P.
Yoder, Guardian *ad litem* for the infant child, on brief), for
appellee.  Appellee submitting on brief.


Benjamin Abbitt appeals from the trial court's decision terminating his residual parental

rights to his minor child, M.P., pursuant to Code § 16.1-283(B).  Abbitt contends he substantially

complied with the requests from Lynchburg Division of Social Services (DSS) and DSS failed to

provide adequate services to meet his needs.  We disagree and affirm.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

proved that Tony Snow, Housing Inspector for the City of Lynchburg, first came in contact with

Abbitt in November 2003 when he lived at a certain residence with M.P. and M.P.'s mother

(mother).  Approximately four months later, Snow saw Abbitt, M.P., and mother at a second

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

residence. Snow found garbage next to baseboard heaters that created a fire danger. Snow gave the family an opportunity to remedy the unsafe conditions, but when he returned for a second visit on March 31, 2004, the conditions were worse. Snow gave the family a second opportunity to remedy the unsafe conditions and returned for a visit on April 4, 2004, but he condemned the house as unfit because the conditions had not been corrected and the house's conditions were too dangerous for human habitation. Photographs of Abbitt's residences were admitted into evidence.

Sally Barca, a social worker with Child Protective Services, responded to a complaint on April 1, 2004. Barca testified there were tight pathways in the house, areas were blocked with piles of items, there was rotting food in the kitchen, and trash was everywhere. Barca testified mother's parental rights to seven other children had been terminated and there was one founded complaint against Abbitt when he assaulted mother while she was holding M.P. DSS took custody of three-year-old M.P. on April 1, 2004.

Abbitt is deaf and DSS scheduled a psychological evaluation with an interpreter, but he failed to keep the appointment. DSS scheduled a second appointment with an interpreter, and Dr. James Anderson administered a test designed for deaf individuals. Dr. Anderson found that Abbitt scored in the low average range for intelligence and showed deficits in judgment and emotional control. Dr. Anderson testified Abbitt showed limited understanding of child development and parenting and Abbitt would have difficulty safeguarding a child. Dr. Anderson testified Abbitt showed a lack of empathy and he doubted whether this lack of empathy could be remedied. Dr. Anderson concluded that Abbitt showed signs of significant personality dysfunction in the form of dependent, narcissistic, and schizoid personality traits, and scored in the high risk range on a measure of child abuse. In Dr. Anderson's opinion, Abbitt's progress in a classroom setting would be limited.

Mary Rice, a counselor, worked with Abbitt to improve his parenting skills. They met twice a month for ninety minutes with an interpreter between November 2004 and February 2005. Rice testified Abbitt struggled with basic safety concepts and made minimal progress. Nine sessions were scheduled, but Abbitt failed to meet with Rice and the interpreter for three of the sessions. Due to mother's history of abuse and neglect, Rice worked with Abbitt to establish a separate residence from her. Rice testified Abbitt believed mother was a good parent and he looked to her for help. Rice testified Abbitt became frustrated because DSS did not believe mother was a good parent. Rice also worked with Abbitt on housekeeping and hygiene. Rice and Abbitt discussed the conditions of the residence that led to the removal of M.P. Rice testified Abbitt did not accept responsibility for the conditions of the residence and blamed the situation on DSS for appearing at the residence unannounced.

Lisa Bailey, a social worker with DSS, believed the best chance of returning M.P. to the home was to focus on Abbitt since mother's parental rights to seven children had previously been terminated. Bailey testified Abbitt completed parenting classes with an interpreter, but Abbitt believed the classes were too advanced for him. Bailey testified Abbitt attended weekly visitation with M.P., but sometimes Abbitt failed to interact with M.P. and read a newspaper instead. Bailey testified there was an occasion when Abbitt arrived with body odor and M.P. stated, "Benji, you stink." Bailey testified on another visitation, Abbitt had a cold and M.P. gave Abbitt a tissue and told him to wipe his nose.

Bailey attempted to visit the residence where Abbitt and mother were living, but she was allowed inside on only one occasion. Bailey took photographs of the outside of the residence, which were admitted into evidence. A photograph showed an accumulation of shopping carts and other items outside the residence. Bailey testified she discussed with Abbitt the need to separate from mother, but he refused to separate from her. Bailey testified an interpreter was present for

Abbitt's scheduled appointments, but he frequently failed to keep the appointments and would later show up without an appointment, demanding to see her. In April 2005, two months after the termination petition was filed and one year after M.P. had come into DSS's care, Abbitt left a note with DSS saying he had left mother; however, this move resulted in Abbitt being homeless. In a June 21, 2005 note left at DSS, Abbitt stated he planned to rent a two-bedroom apartment on July 1, 2005. Abbitt failed to rent the apartment. Bailey testified she stopped services to Abbitt in February 2005 after receiving a psychological evaluation that gave no meaningful hope Abbitt could safely parent a child.

Bailey testified M.P. had rotted teeth, high levels of lead in his blood, and was not up-to-date on his immunizations when he came into the custody of DSS. At the time of the termination hearing, M.P. had restorative surgery for his teeth, his blood level for lead was normal, and his immunizations were current. M.P. had been in a foster home, and the family wanted to adopt him.

Abbitt testified he found a place to live three days before the November 4, 2005 termination hearing, which was twenty months after DSS took custody of M.P. Abbitt admitted he learned of mother's history of child neglect in July 2004, but did not then separate from her for nearly a year. After mother entered into a romantic relationship with another man, Abbitt continued to live with them and slept on the floor while they slept in the bed.

ANALYSIS

Abbitt argues the evidence failed to prove he did not respond or follow through with the recommended treatment to improve his capacity for adequate parental functioning and DSS failed to offer services to meet his physical disabilities or intellectual shortfalls.

Code § 16.1-283(B)(2) requires proof, by clear and convincing evidence, that:

> It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated

- 4 -

so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

In this case, DSS presented clear and convincing evidence that Abbitt could not correct the conditions that resulted in the abuse and neglect of M.P. within a reasonable period of time and that DSS provided adequate services based upon Abbitt's needs. M.P. came into the custody of DSS in April 2004 due to severe and continuing unsanitary living conditions and evidence of violence between Abbitt and mother. M.P.'s teeth were rotted, he had high blood levels of lead, and he had not been adequately immunized. Rice and Bailey counseled Abbitt that he must not live with mother due to her history of child abuse and neglect. Abbitt refused for more than one year to establish housing separate from mother. For a period of time, Abbitt was homeless; he rented an apartment just days prior to the termination hearing, which was twenty months after DSS took custody of M.P. Abbitt's behavior demonstrated a lack of commitment when he missed scheduled appointments with Bailey, Rice, and Dr. Anderson where an interpreter was present. Rice met with Abbitt with an interpreter and worked with him to improve his parenting skills, but Abbitt struggled with basic safety concepts and made minimal progress. During visits with M.P., Abbitt would sometimes not interact with him, but he would read a newspaper, and three-year-old M.P. helped Abbitt with basic hygiene. Although Abbitt completed a parenting class, he believed the class was too advanced for him. Based upon a psychological evaluation, Dr. Anderson believed that Abbitt would have difficulty safeguarding a child, that Abbitt showed a lack of empathy, that Abbitt

showed signs of significant personality dysfunction in the form of dependent, narcissistic, and schizoid personality traits, and that Abbitt scored in the high risk range on a measure of child abuse. Abbitt's actions with mother were consistent with Dr. Anderson's diagnosis of dependency. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, we affirm the trial court's termination of Abbitt's parental rights to M.P. pursuant to Code § 16.1-283(B).

Affirmed.