**Richmond**

DANNY LEE KAYWOOD, SR.

v.

HALIFAX COUNTY DEPARTMENT OF
SOCIAL SERVICES

No. 0439-89-2

Decided July 3, 1990

536

COUNSEL

Kimberley D. Slayton (Vaughan & Slayton, on brief), for appellant.

Lester L. Dillard, III (Joel C. Cunningham, guardian ad litem; Tuck, Dillard, Nelson & Dillard; Williams, Luck, Cunningham & Williams, on brief), for appellees.

OPINION

**DUFF, J.**—On March 8, 1989, the Circuit Court of Halifax County entered an order terminating the parental rights of Danny Lee Kaywood, Sr. On appeal, he questions only whether the Department of Social Services (Department) sustained its burden of proof as required by Code § 16.1-283(B)(2). No issue is raised concerning the filing of a foster care plan. Upon consideration of the briefs, the argument of counsel and the record, we conclude that the Department properly sustained its burden of proof and we affirm.

I.

On January 29, 1986, appellant Danny Lee Kaywood, Sr., was involved in a minor traffic accident. While investigating the accident, a Virginia State Trooper discovered that Kaywood's son, Danny Lee Jr., who was in the vehicle, was in need of medical

attention. The child was immediately transported to Halifax-South Boston Community Hospital.

An examination of the child revealed fractures of the skull and jaw. The child was lethargic, pale, and had many visible bruises about his face. A CT scan also showed some brain injury. Being in critical condition he was transported to the Medical College of Virginia. Further x-rays at MCV revealed that in addition to the other fractures, the infant had old breaks of his right arm (his ulnar and radial), and his right leg (his femur). The child was ten months old at the time his injuries were discovered.

Further investigation indicated that the appellant had beaten the child severely on numerous occasions. Kaywood was charged with malicious wounding and willful neglect of his son. The child's mother, Patricia Smith Kaywood, was charged with willful neglect. Both were found guilty and the appellant was sentenced to twenty years in the penitentiary.

After being placed in foster care the child began to improve rapidly, both mentally and physically. A clinical psychologist gave the opinion that his best interests would be served by placing him with an adoptive family.

Proceedings seeking the termination of parental rights were sought by the Halifax County Department of Social Services in a petition filed March 2, 1987. Based on the information presented, the court terminated the parental rights of both parents.

Mr. Kaywood appealed this decision to the Circuit Court of Halifax County. Testimony was received as to the child's condition at the time of his initial hospitalization, his recovery, and the current level of progress. The court also heard evidence that there was no regular visitation between the appellant and his son, and on those occasions when the appellant did visit his son the child became visibly upset and clung to the social worker as soon as he entered the room. The appellant has seen his son on only one occasion since June 23, 1987, and has not requested Social Services or Court Services personnel to expand visitation.

Mrs. Aurelia Roller, the caseworker involved in this case since March of 1986, testified that because of the circumstances which led to his placement, Danny Jr. would require special care and have needs which his father would be unable to provide. The child

is in need of a stable, patient and loving family that can cope with the trauma he received. In addition, Mrs. Roller testified that the appellant's failure to maintain contact with his son, his prior inability to hold full-time employment, the uncertainty regarding his incarceration and his current domestic situation all pointed to the fact that the conditions which caused Danny Jr., to be placed in foster care could not be corrected within a reasonable time.

The appellant testified that he had, while in prison, obtained his GED and participated in various inmate support groups.

After hearing the evidence and the argument of counsel, the trial court held that the child came within the purview of Code § 16.1-283(B) and terminated Kaywood's parental rights.

## II.

The appellant's contention is based upon the trial court's application of Code § 16.1-283(B)(2), which provides the criteria to be considered by the court before terminating parental rights. In cases involving parents whose child has been found to have been abused or neglected and placed in foster care, termination of residual parental rights can proceed only after the Court makes three statutorily required findings. First, the Court must find that the termination of the parents' residual rights is in the "best interests of the child." Code § 16.1-283(B). Second, the neglect or abuse suffered by the child must present a "serious and substantial threat to his life, health or development." Code § 16.1-283(B)(1). Third, the Court must find that "it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." Code § 16.1-283(B)(2). This appeal involves only application of the third finding.

## III.

The general purpose and intent clause of the Virginia Juvenile Code states in part that "the welfare of the child and the family is the paramount concern of the Commonwealth . . . . This law shall be interpreted and construed so as to effectuate the following purposes: . . . (3) To separate a child from such child's parents . . . only when the child's welfare is endangered . . . ."

Code § 16.1-227. To this end, the statutory scheme of Code § 16.2-283 is designed to "balance the needs of the child against the rights of the parents and the common interest in preserving family relationships." *Edwards v. County of Arlington*, 5 Va. App. 294, 306, 361 S.E.2d 644, 650 (1987). The three factors in the statute must be met by clear and convincing evidence, and the trial court must be convinced that termination is in the best interest of the child. *Knox v. Lynchburg Div. of Social Servs.*, 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982).

The first two factors are clearly met by the evidence in this record. The medical evidence shows that the child had been seriously abused and injured to the point that his life was in danger. Indeed, the appellant does not dispute this fact. We conclude that the trial judge did not err in finding that the best interest of the child is served by terminating the parent-child relationship and the "neglect or abuse suffered by the child presents a substantial threat to his . . . life, health and development."

With regard to the third factor, which is contested, the statute provides guidance by defining three types of proof which constitute *prima facie* evidence that correction of deficient or endangering home conditions is unlikely. Two of these situations deal with mental illness or substance abuse. The third involves a parent who, "without good cause, has not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child." Code § 16.1-283(B)(2)(c). Counsel for the appellant contends that the Department has provided no proof that he was ever offered, or ever participated in, any rehabilitative services. Thus, he contends that the Department failed to sustain its burden. We disagree because, while the statute provides that evidence of one of these three situations will constitute *prima facie* evidence that it is not reasonably likely that the child can be returned to the parent in a reasonable period of time, the statute does not condition such a finding upon this evidence alone.

The trial court was presented with evidence that included: (1) severe physical abuse inflicted upon the infant; (2) the failure of the father to seek any type of medical treatment for his son; (3) the uncertainty regarding the father's sentence of incarceration

for twenty years; (4) the father's inability to hold a full-time job; and (5) the father's disinterest in establishing any type of visitation, as well as his failure to make any effort at contacting the child since 1987. Upon this evidence the court determined that it was not likely that the condition which resulted in the child's abuse could either be corrected or eliminated so as to allow his return within a reasonable time.

The phrase, "within a reasonable time" is an important element of the statutory scheme. One of the goals of the Commonwealth, as noted, is to maintain the family structure in all possible circumstances. The Code recognizes, however, that there are circumstances in which this will not be possible. It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities. This child was found in a pitiful condition. He had been abused physically and emotionally and was in need of immediate medical care. The appellant appeared incapable of fulfilling his child's needs, and has not demonstrated any increased ability, or desire, to do so in the years since he was separated from the child.

The phrase, "within a reasonable time" is not definable by any prescribed rule. Its meaning depends upon the context and the attendant circumstances; not upon mere opinion or expectation. *Virginia Ass'n of Ins. Agents v. Commonwealth*, 187 Va. 574, 579, 47 S.E.2d 401, 404 (1948). The trial court, faced with the facts contained in this record, was justified in finding that the child was not likely to be returned to his parent within a reasonable period of time.

Accordingly, the order appealed from is

*Affirmed.*

Benton, J., and Coleman, J., concurred.