COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, McClanahan and Senior Judge Coleman


GOLDIE ARNOLD

MEMORANDUM OPINION[*]
v.        Record No. 1600-03-4                           PER CURIAM
                                                         FEBRUARY 10, 2004
WINCHESTER DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John E. Wetsel, Jr., Judge

(Mark A. Vann; Vann & Vann, P.L.C., on brief), for appellant.

(Elizabeth M. Muldowney, Interim City Attorney, on brief), for
appellee.

(Nate L. Adams, III, Guardian *ad litem* for the minor child;
Adams & Kellas, P.C., on brief).


        Goldie Arnold (mother) appeals an order of the trial court terminating her parental rights to

S.B., her daughter.  Mother contends the trial court erred by:  (1) not fully considering the child's

desire to remain attached to mother and whether S.B. was of the age of discretion; (2) finding that

the termination was in the best interests of the child; and (3) terminating her parental rights pursuant

to Code §§ 16.1-283(B)(2) and 16.1-283(C)(2).  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the

decision of the trial court.  Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

On appeal, we view the evidence and all reasonable inferences in the light most favorable to the Winchester Department of Social Services (WDSS) the prevailing party below. See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

S.B. was born in 1990. On September 16, 2000, she and three of her siblings were removed from mother's care based on abuse and neglect charges. The children were living in a dilapidated, unsanitary dwelling which was missing two windows. Inside the residence, garbage was piled waist high in some areas, and food remnants were scattered about. The four children had head lice and scabies, were hungry, and were dressed in dirty, tattered and worn clothing.

In December 2000, the juvenile and domestic relations district court (JDR court) approved a foster care service plan in which mother agreed to complete a psychological evaluation and follow its recommendations, complete parenting classes, maintain employment to financially support the family, maintain visitation with the children, and secure and maintain appropriate housing. In June 2001, the JDR court approved a second foster care service plan which showed that mother was attending parenting classes and was employed part-time, but mother had not secured appropriate housing. In November 2001, the JDR court approved a third foster care service plan which showed that mother had completed a psychological evaluation and a parenting class. However, she was still employed only part-time and was homeless.

On April 19, 2002, almost two years after S.B. was removed, WDSS petitioned to terminate mother's parental rights. The April 5, 2002 foster care service plan noted that mother had failed to complete her substance abuse education, was homeless, was not gainfully employed, and continued to fraternize with a man who physically abused her in front of her children. Mother had also failed to make appreciable progress in completing the goals of the original foster care plan. The JDR court terminated mother's parental rights, and mother appealed to the trial court.

On May 15, 2003, the trial court held a hearing on the matter. Mother was thirty-three years old at the time of the hearing. She has a seventh grade education and has some congenital and intellectual limitations. She has a history of alcohol abuse and sporadic employment. In a parental capacity evaluation of mother, Dr. Bernard Lewis, Ph.D., found that mother was suffering from a "severe degree of psychological dysfunction." Dr. Lewis opined that mother's condition is chronic and she has "an extremely poor prognosis" to make the necessary changes to address the family's issues. At the time of the trial court hearing, mother had not seen S.B. for twelve months.

S.B. has intellectual limitations, and she attended special education classes at her public school. She was doing well in school at the time of the trial court hearing. She had been residing with the same foster care family for several years. The trial court found that S.B. had bonded well with the foster care family, who wished to adopt her. The trial court also found S.B. competent to testify. S.B. testified that she was scared to be alone with her mother because her mother had hit her in the past. S.B. also stated that she did not want to visit with mother alone and she wanted to live with her foster family until she is eighteen or twenty years old.

The trial court found that mother

> failed to maintain regular employment or an independent
> household. Sometimes she lived with her mother, sometimes she
> lived with her sister, sometimes she was homeless, and she was in
> jail for a month and a half. She failed to complete her substance
> abuse program, and she continued her dysfunctional relationship
> with her boyfriend despite the admonitions of [WDSS]. She failed
> to follow up her psychological evaluation with psychological or
> psychiatric treatment.

Mother's explanation as to why she had failed to comply with the foster care plan was that she had suffered a nervous breakdown after the children were removed from her custody. The trial court found that mother's mental disabilities "make it difficult for her to maintain a viable independent household for herself, let alone herself and a child. Past conduct is an

excellent predictor of future behavior and this mother has failed in the upbringing of all of her children, there is no reason to gamble further with the future welfare of [S.B]." The trial court found that mother had, without good cause, failed to provide or substantially plan for the future of the children notwithstanding the reasonable and appropriate efforts of the rehabilitative agencies. See Code § 16.1-283(C)(1). The trial court further found that WDSS had made reasonable and appropriate efforts to remedy the conditions which led to S.B.'s placement, had regularly counseled mother, and had offered her assistance, but the efforts were unsuccessful. In addition, the trial court found that S.B. was abused and neglected while in mother's care, that she suffered emotional damage and physical abuse while in mother's care, and that a serious and substantial threat to S.B.'s health and development would exist if S.B. was returned to mother's custody. See Code § 16.1-283(B)(1). The trial court found that S.B.'s foster parents were meeting her needs.

The guardian *ad litem* for S.B. recommended that the trial court terminate mother's parental rights, which the trial court did.

Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

- 4 -

Mother first argues that S.B.'s age, maturity, and expressed desire to maintain contact with mother prevented the termination of mother's parental rights pursuant to Code § 16.1-283(G). Code § 16.1-283(G) provides, in part, "residual parental rights shall not be terminated if it is established that the child, if he is fourteen years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination."

S.B. was less than fourteen years old at the time of the trial court hearing. Furthermore, the trial court made no determination that S.B. was "otherwise of an age of discretion." Indeed, the trial court found that S.B. did not completely understand the concepts of termination of parental rights and adoption. Therefore, Code § 16.1-283(G) is inapplicable to this case.

The trial court terminated mother's parental rights pursuant to Code §§ 16.1-283(B)(1) and 16.1-283(C)(2). The pertinent part of Code § 16.1-283(C)(2) provides that

> [t]he residual parental rights of a parent . . . of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . the parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of . . . rehabilitative agencies to such end.

The evidence showed that mother failed to comply with the foster care service plan by failing to maintain regular employment and stable housing. She also failed to follow up on her psychological evaluation and treatment recommended by Dr. Lewis, including the completion of the substance abuse program. Dr. Lewis testified that mother was "grossly lacking in parenting skills and knowledge" and that her psychological dysfunction prevented her from understanding and addressing any problems S.B. may have. In addition, mother's mental disabilities have prevented her from establishing an independent, functioning household, and she has "an extremely poor prognosis" for change. Moreover, her mental deficiencies do not constitute

"good cause" to excuse her from remedying the conditions which led to the foster placement.

See Richmond Dep't of Soc. Servs. v. L. P., 35 Va. App. 573, 585, 546 S.E.2d 749, 755 (2001).

> Waiting indefinitely to find out if the mother might someday remedy the conditions that resulted in [S.B.]'s foster care placement only prolongs the lack of stability and permanency in [S.B.]'s life, with no guarantee or even reasonable likelihood that the mother will ever be able to adequately care for [S.B.] in the future. Thus, . . . the mother's mental deficiency in this case does not prevail over the child's best interests.

Id.

In addition, terminating mother's parental rights is in the best interest of S.B. The trial court found that S.B. suffered neglect, emotional damage and physical abuse while in mother's care. The evidence further supports the trial court's finding that the neglect or abuse suffered by S.B. presented a serious and substantial threat to her health and development. See Code § 16.1-283(B)(1). The residence S.B. last resided in with mother was unsanitary with waist high garbage collecting in some areas. Two windows were missing in the home. S.B. suffered from head lice and scabies, was hungry, and was dressed in dirty, tattered clothing when she was removed from mother's care. S.B. testified her mother struck her. Furthermore, the evidence showed that it is not reasonably likely that the conditions which resulted in the neglect or abuse will be substantially corrected or eliminated within a reasonable period of time. See Code § 16.1-283(B)(2). Since September 2000, when S.B. was removed from mother's custody, mother has not obtained stable and independent housing, steady employment or completed the requirements of the foster care service plans.

Finally, "[i]t is clearly not in the bests interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) (citation omitted). S.B. is doing well with her foster family, with whom

she has resided for several years.  The family has also expressed a desire to adopt her.

Therefore, the record supports the decision of the trial court to terminate mother's parental rights.

For the reasons stated herein, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>