COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Felton and Senior Judge Willis


LORISA F. WILLIS

MEMORANDUM OPINION[*]

v.      Record Nos. 1873-05-3 and                                PER CURIAM
              1874-05-3                                          FEBRUARY 28, 2006


HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

(Kathleen M. Mizzi Todd, on brief), for appellant.  Appellant
submitting on brief.

(Kim Van Horn Gutterman, Assistant County Attorney; Benjamin H.
Carr, Jr., Guardian *ad litem* for the minor children, on brief), for
appellee.  Appellee and Guardian *ad litem* submitting on brief.[1]


        Lorisa F. Willis, mother, appeals the trial court's decision, dated July 6, 2005, terminating

her parental rights to her two children.  She contends the evidence was insufficient to support the

termination of her parental rights pursuant to Code § 16.1-283(B) and (C)(2) and argues the trial

court erred by terminating her parental rights based on her refusal to take her medication.  Upon

reviewing the record and briefs of the parties, we conclude that these appeals are without merit.

Accordingly, we affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We grant appellee's motion to extend the time to file its brief; the brief is considered
filed.

Background

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established that the Harrisonburg Rockingham Social Services District (HRSSD) first became involved with this family when investigating a sexual abuse complaint involving one of the children and the child's father. The father was adjudicated to have sexually abused this female child. Through this involvement with the family, it became clear that Willis needed services. The HRSSD directed her to undergo a psychological evaluation by Dr. Joann Grayson, and then the court ordered her to comply with the doctor's recommendations.

Dr. Grayson found that Willis suffers from "serious and chronic mental illness." Willis acknowledged that she had been hospitalized seven times between 1985 and 1999 and that these hospitalizations were "preceded by paranoid and confused thinking, bizarre behaviors, and sometimes runaway behavior and/or suicide attempts." Willis had been previously diagnosed as having "Schizophrenia, paranoid type and as Major Depression." Dr. Grayson diagnosed Willis as having Schizoaffective Disorder, in remission, and R/O Paranoid Personality Disorder and wrote in her report that regardless of the exact diagnosis, "Willis is coping with a serious and chronic mental illness." Dr. Jeffrey Lightner conducted a separate assessment of Willis and diagnosed her as having "probable schizoaffective disorder" with "psychotic features" and "significant paranoid features."

Dr. Grayson assessed Willis's risk of harm to her children and found that she is "at risk for abusive behaviors towards her children" and a "high risk for dysfunctional parenting and/or abuse and neglect." Dr. Grayson assented that Willis "can over-react and physically harm her children while attempting to discipline them," that her frequent use of physical discipline can emotionally

harm the children, and that the "recurrence of the depressive symptoms has the potential of danger for the children."

Willis's paranoia disorder manifested itself several times to the mental health professionals involved in her case. Willis tried to control everything that happened with her children, a typical symptom of paranoid disorder. For example, she wanted to be present during her child's counseling session with Dr. Rhonda Weber, only wanted her child to play with certain toys during therapy sessions, and quizzed the child about everything that happened in the session. Although Dr. Weber advised Willis not to fight with her parents in the children's presence to decrease the children's anxiety, Willis would not cooperate. Willis refused to tell the social worker what state her children were born in, whether she was in counseling, what her phone number was, or just generally how she was doing. Willis refused to sign most consent forms, and of the four consent forms she did sign, she changed them to limit the information provided so that HRSSD could not measure her progress.

Between the fall of 2001 and the spring of 2002, HRSSD became aware that Willis's mental illness was negatively impacting the children and filed a petition requesting emergency custody of the children. Willis had shown increasingly erratic behavior, outbursts, and paranoia, and the juvenile and domestic relations district court (JDR court) found that the children were abused or neglected and removed the children in March 2002.

Meanwhile, from July 2001 through June 2005, HRSSD offered and provided reasonable and appropriate services to Willis to assist her in managing her mental illness, including the evaluation by Dr. Grayson previously mentioned. Dr. Grayson noted that if Willis "is going to function as a single parent, it is imperative that she confront her illness and develop a management plan." Dr. Grayson made a series of recommendations on how Willis could manage her mental illness. Dr. Grayson recommended a medication evaluation to inform Willis about medication management choices; use of a case manager to assist in monitoring symptoms, teach management

skills, assist with parenting issues, locate resources and offer assistance; that Willis attempt to qualify for social security disability which could help maintain her family; that Willis attend parenting classes due to her high risk for dysfunctional and harmful parenting; that she follow up on her expressed interest in counseling; and that she find a place to live that included support from others with a possible future goal being independent living. Dr. Lightner stated that Willis's type of mental illness is usually treated with counseling and medication throughout the patient's lifetime, although people with paranoid symptoms tend to be more reluctant to take their medicine.

Willis refused to take her recommended medication. Willis previously had refused to take the prescribed medication each time she had been discharged from psychiatric hospitalizations, and had refused to take her medication despite the JDR court's termination of her face-to-face visitation with her children until she did so. Willis also refused social worker Sara Kiser's offer of management services because she "didn't want them involved in her life." In November 2002, Willis began working with a case manager but no longer had a case manager at the time of trial. Willis refused to apply for social security because she "didn't want to be part of that system." Prior to the children's placement in foster care, Kiser referred Willis to a parenting class through the Family Life Resource Center, but Willis never attended class. Kiser offered In-Home Services, but Willis refused them. Eventually, in 2003, Willis completed a parenting class. Although Kiser referred Willis to counseling in 2001, Willis did not begin counseling until January 30, 2002 but stopped going when the children were removed in March 2002, having completed only five to seven sessions. Willis said she stopped going to counseling because it was not her choice and "[i]f I was going to deal with my problems the way I wanted to deal with them I would choose someone who I felt I could have complete, have no disclosure." Willis did not go to counseling for six months, until just before the Foster Care Review when she chose to go to Harvey Yoder because "Social Services wasn't running it." However, Willis saw Yoder "more than once or twice" but not "as

much as ten" times before she stopped seeing him. Willis saw another counselor, Sara Zimmerman, on an "off and on basis" and acknowledged missing several of her scheduled appointments. Lastly, Willis acknowledged that she had "moved lots of times" after her children were removed from her custody, that she had moved to a single room that was unsuitable for her children, and said her "interest right now is not setting up for [her] children, it's saving money." Willis lived alone without support, contrary to Dr. Grayson's recommendations. Willis said she did not seek advice from her family but got advice from others by "do[ing] a lot of book reading."

Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(B) provides that a parent's parental rights to neglected or abused children may be terminated if the court finds by clear and convincing evidence that it is in the children's best interests and that (1) the neglect or abuse presented a substantial threat to the children's life, health, and development, and (2) it is unlikely that the conditions that resulted in the neglect or abuse can be substantially corrected or eliminated such that the children can return to their parent's care within a reasonable period of time. Proof that the parent, without good cause, has not responded or followed through with appropriate efforts by the various agencies designed to reduce, eliminate or prevent the neglect or abuse is prima facie evidence of these conditions. Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of

- 5 -

the child, (2) "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." "[T]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

HRSSD proved by clear and convincing evidence that termination of appellant's parental rights was in her children's best interests. The evidence is undisputed that Willis is a paranoid schizophrenic and has a depressive disorder and that Willis has failed to follow through with recommended treatment although it has been offered. Willis "simply picks and chooses" what she will do with "no rhyme or reason or excuse given for this." The evidence proved that Willis has failed to confront or manage her mental illness within a year after the children's removal and that her mental illness has negatively impacted her children and led to their abuse and neglect, presenting a serious and substantial threat to their health, lives, and well-being. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In addition, the evidence proved that the termination was based on Willis's inability to control her mental illness, not on her refusal to take medication.

The record supports the trial court's finding that HRSSD proved by clear and convincing evidence that Willis's parental rights should be terminated pursuant to Code § 16.1-283(B) and

(C)(2) and that the termination of Willis's parental rights was in her children's best interests. Accordingly, we affirm the judgment.

On February 2, 2006, appellant filed *pro se* a reply brief. Because the filing was untimely, we have not considered the brief.

<u>Affirmed.</u>