COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Haley and Senior Judge Coleman

CHRISTINA SNEAD

                                                    MEMORANDUM OPINION[*]
v.       Record No. 1645-06-1                              PER CURIAM
                                                        JANUARY 16, 2007
CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                        William C. Andrews, III, Judge

            (M. Woodrow Griffin, Jr., on brief), for appellant.

            (Rachel Allen, Assistant City Attorney; Thomas Burcher; Guardian
            *ad litem* for the minor child; Terry Grinnalds, Guardian *ad litem* for
            appellant; Hawkins, Burcher and Boester, PC, on brief), for appellee.


        Christina Snead appeals the decision terminating her parental rights to her child pursuant to

Code § 16.1-283(B) and (C).  She contends that she had not willfully done anything or willfully

refused to do anything harmful to her child and that the evidence was insufficient to support the

termination of her parental rights.  Upon reviewing the record and briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily affirm the trial court's decision.  Rule

5A:27.

                                        Background

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

established that Snead gave birth to her child on June 10, 2005.  Five days later, the Hampton

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Department of Social Services took custody of this child because the child was "subject to an imminent threat to life or health." From February 2005 until June 10, 2005, Snead had been a patient at Riverside Behavioral Center with a diagnosis of schizoaffective disorder and had denied being pregnant until the day before her child's birth. After giving birth, Snead was transferred to Eastern State Hospital for treatment of her disorder. In August of 2005, Snead was discharged to Hilton Adult Home where she received assistance with her medication management, housing, daily living activities, hygiene, and meal preparation.

After Snead arrived at Hilton Adult Home, she began to receive outpatient care from Matthew Angelelli, a psychiatrist, for schizophrenia. Dr. Angelelli testified that Snead initially was taking her medication and "was doing very well." However, Snead stopped taking her medication regularly and had not taken any medication in the several months preceding the hearing. She has become disorganized in thought, less reasonable, and irritable, and she has continued to deny that she had a child. Dr. Angelelli explained that Snead is incapable of independent living when she does not take her medication and that, even when Snead takes her medication, she still may be incapable of living independently. Dr. Angelelli also opined that Snead is not capable of caring for or rearing an infant because she is unable to plan appropriately, unable to understand what she is seeing, and then unable to execute a response to events. Asked to opine as to the likelihood Snead could care for the child in the future, he responded: "She won't be able to. The course of schizophrenia is a worsening course. With medication, the slope of worsening is less, but it is still a worsening course."

Dr. Angelelli testified Snead has been hospitalized at Eastern State eight times and many other times at other hospitals. Each time she is discharged from the hospital, she stops taking her medication after about two weeks. A month before the hearing, Snead had to be hospitalized after

becoming paranoid and angry, destroying furniture, and thinking her roommates "were coming after her."

Merideth Malpass, Snead's case manager, recalled that in some conversations, Snead says she wants to get her own apartment and care for her child, but that in other conversations Snead denies having a child. In one conversation, Snead told Malpass that she did not think she was able to care for her child.

Sherrica Fulghm, the social worker assigned to Snead's child, prepared an initial foster care plan with the goal as "return to parent." The plan required Snead to undergo a parental capacity evaluation, obtain and maintain housing, undergo parenting classes, obtain and maintain employment, and follow other recommendations of the Department. Snead did not complete any of these services. The second foster care plan identified adoption as the goal. Fulghm testified that, at all times since Snead's child was born, Snead has either been hospitalized for treatment or living at Hilton Adult Home. Snead's child lives with Snead's maternal relatives who are willing to adopt him.

Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(B) provides that a parent's residual parental rights to neglected or abused children may be terminated if the court finds by clear and convincing evidence that it is in the

children's best interests and that (1) the neglect or abuse presented a substantial threat to the children's life, health, and development, and (2) it is unlikely that the conditions which resulted in the neglect or abuse can be substantially corrected or eliminated such that the children can return to their parent's care within a reasonable period of time. Proof that the parent, without good cause, has not responded or followed through with appropriate efforts by the various agencies designed to reduce, eliminate or prevent the neglect or abuse is prima facie evidence of these conditions. Code § 16.1-283(B)(2)(c).

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that the termination is in the best interests of the child and that the parent has been "unwilling or unable within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care" to remedy substantially the conditions which led to the child's placement in foster care. Code § 16.1-283(C)(2) also requires proof that "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement" and that despite these services, the parent has failed, "without good cause," to remedy those conditions within a reasonable time.

"[T]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted). Indeed, the record in this case establishes by clear and convincing evidence that termination of Snead's parental rights was in her child's best interest. Snead has been unable to complete or begin the recommended services offered to her due to her mental disability, which at times is so extreme that Snead denies she even has a child. Contrary to Snead's claim that she has "not willfully done anything or willfully refused to do anything" harmful to her child justifying termination of her

- 4 -

parental rights, the statute also applies to situation where the parent is "unable" to remedy the conditions leading to the child's foster care placement.

In Richmond Dep't of Soc. Servs v. L.P., 35 Va. App. 573, 546 S.E.2d 749 (2001), we held that a parent's inability to remedy the conditions which led to the child's placement is not excused where the

> parent's mental deficiency . . . is of such severity that there is no reasonable expectation that such parent will be able within a reasonable period of time befitting the child's best interests to undertake responsibility for the care needed by the child in accordance with the child's age and stage of development.

Id. at 585, 546 S.E.2d at 755. Thus, we held in L.P., that the parent's mental deficiency does not constitute "good cause" under Code § 16.1-283(C)(2). 35 Va. App. at 585, 546 S.E.2d at 755. The record proved Snead has had no contact with her child since the child was born. Dr. Angelelli testified Snead's schizophrenia is a progressive disease that cannot be cured and is likely to worsen over time. He further testified that even if she takes her medication as prescribed, she is unable to raise and care for her child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial judge's finding that the Department proved by clear and convincing evidence that Snead's parental rights should be terminated pursuant to Code § 16.1-283 and that the termination of Snead's parental rights was in her child's best interest. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.