COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Coleman


TAWANDA EVANS SAUNDERS

                                                            MEMORANDUM OPINION*
v.       Record No. 0619-07-2                                    PER CURIAM
                                                              AUGUST 21, 2007
CHARLOTTE COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
Leslie M. Osborn, Judge

(James C. Bell, on brief), for appellant.

(Michael J. Brickhill; Brandon G. Hudson, Guardian *ad litem* for the
minor child, on brief), for appellee.


Tawanda E. Saunders contends the evidence was insufficient to support the termination of

her parental rights pursuant to Code § 16.1-283(B) and (C).  Upon reviewing the record and briefs

of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the

trial judge's decision.  Rule 5A:27.


Background

When an appellant challenges the sufficiency of the evidence, we review the evidence in the

light most favorable to the prevailing party below and grant to it all reasonable inferences fairly

deducible therefrom.  See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128,

409 S.E.2d 460, 462 (1991).  So viewed, the evidence established that Saunders gave birth to her

child on July 16, 2005 at a motel.  Saunders and the child were transported to a hospital where she

and her newborn child tested positive for cocaine.  When a social worker investigated a complaint

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of abuse and neglect of the child, who tested positive for cocaine at birth, Saunders denied using cocaine but said she had smoked a cigarette that tasted "strange" and had smoked marijuana about two weeks prior to her child's birth. Saunders said she had obtained no prenatal care and was unaware that she was pregnant.

After the Charlotte County Department of Social Services petitioned for an adjudication of abuse against Saunders and the issuance of a child protective order, Saunders and the Department entered into a "safety plan." Saunders agreed she and the newborn would live with Saunders's grandmother, who would provide supervision. Saunders also agreed not to leave the house with the child unless accompanied by her grandmother and to refrain from drug use. In addition Saunders and her grandmother entered into a "plan of care agreement" with the Department, requiring Saunders's grandmother to supervise Saunders and the child and requiring Saunders to obtain mental health and substance abuse evaluations and treatment. On July 22, 2005, the juvenile and domestic relations district court found that the child was abused or neglected as a result of the child's positive cocaine test at birth and incorporated into the child protective order this "safety plan" and "plan of care agreement."

During the next two months, Saunders remained unemployed and had no apparent income. Saunders made inaccurate reports to the Department. When confronted with the inaccuracy of her report that she was enrolled in community college, Saunders said she was enrolled in a "satellite" class, a claim that also proved to be inaccurate. Saunders also provided incomplete information to her therapist who was completing Saunders's mental health and substance abuse evaluations. When the Department had difficulty contacting Saunders, her grandmother reported that Saunders was staying out all night and sometimes had her child with her while she was out. On September 23, 2005, Saunders again tested positive for cocaine.

As a result of the positive cocaine test and Saunders's lack of cooperation with services, the Department obtained an order from the juvenile court to remove the child from Saunders's custody. The Department placed the child in foster care on October 4, 2005. The initial foster care plan had concurrent goals of return home and placement with relatives.

The Department continued to provide services to Saunders. A "parent aide" was provided for up to thirty hours a month to instruct Saunders on child rearing matters. The aide was unsuccessful in helping Saunders with budgeting because Saunders was not forthcoming about her income and expenses. Saunders admitted to the aide that she intended to live with her grandmother and that she did not intend to obtain her own living space unless her grandmother evicted her. After four months, the aide discontinued providing in-home parenting services for lack of progress. Saunders also cancelled many mental health therapy sessions that were offered her and failed to participate meaningfully. When these services were unsuccessful, an in-home therapist was offered but Saunders was untruthful about basic matters directly affecting the child. Because no rapport or trust could be established with Saunders, the therapist opined that Saunders was unable to make meaningful progress. When this service was unsuccessful, Dr. Michele Nelson conducted a parenting assessment, but she also reported Saunders was untruthful and compromised the validity of any evaluation. Dr. Nelson concluded that Saunders's "insight and judgment were obviously poor" and that her "inability to take responsibility for her statements and behavior" created a difficult situation.

In addition to her minimal cooperation with these service providers and failure to make any substantial progress, Saunders failed to cooperate in five attempts to obtain the random drug screening sample. On the last attempt, Saunders provided a sample that tested negative. However, because of suspicious circumstances surrounding that sample, the social worker tried to obtain another sample the next day. Saunders refused.

Saunders continued to have no apparent source of income, no verifiable enrollment for education, and a suspended driver's license leaving her dependant on others for transportation. Because of Saunders's lack of progress, the Department pursued the goal of placing the child with relatives. One suitable relative was found, and the child was placed with that relative from late December 2005 until early April 2006. At the relative's request, the Department terminated the placement and found no other suitable relatives. The child was placed in a foster home, where the foster mother indicated a willingness to serve as an adoptive placement for the child.

The trial judge found that the mother's untruthfulness interfered with her meaningful cooperation with the agencies attempting to reunite her with the child, that her untruthfulness interfered with the mother's meaningful future planning for the child, and that the mother had made no substantial steps towards establishing permanency for the child. The trial judge also ruled that the Department had carried its burden by clear and convincing evidence of proving the elements of Code § 16.1-283(B) and § 16.1-283(C).

Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. When the trial judge makes findings "based on evidence heard *ore tenus*, [those findings] will not be disturbed on appeal unless plainly wrong or without evidence to support it." Id. On review, we will presume the trial judge "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990).

Code § 16.1-283(B) provides that a court may terminate a parent's rights to neglected or abused children if the court finds by clear and convincing evidence that it is in the children's best interests and that (1) the neglect or abuse presented a substantial threat to the children's life, health,

and development, and (2) it is unlikely that the conditions that resulted in the neglect or abuse can be substantially corrected or eliminated such that the children can return to their parent's care within a reasonable period of time. Code § 16.1-283(C) provides that residual parental rights may be terminated if the judge finds by clear and convincing evidence that it is in the child's best interests and (1) that the parent has failed to maintain continuing contact with and substantially plan for the child's future within six months of the child's placement in foster care notwithstanding the reasonable and appropriate services offered to the parent and (2) that the parent has been "unwilling or unable" to remedy substantially the conditions which led to the child's placement in foster care. Code § 16.1-283(C)(2) also requires proof that "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement" and that, despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."

The Department proved that termination of Saunders's parental rights was in her child's best interest. Although the child tested positive for cocaine at birth, Saunders denied using cocaine though she too tested positive. Saunders admitted using marijuana two weeks before her child's birth. Despite the numerous services the Department offered her, Saunders made no progress due to her refusal to cooperate and her untruthfulness. Her untruthfulness about matters relating to her child interfered with efforts by various agencies trying to help her reunite with her child. Saunders made no plans for the child's future, she remained unemployed, and she said she planned to obtain adequate housing only if and when her grandmother evicted her. Despite the many services offered, Saunders again tested positive for cocaine. She demonstrated an unwillingness or inability to change the circumstances that necessitated her child's placement in foster care within a reasonable amount of time. Thus, the evidence proved Saunders's conduct presented a serious and substantial

threat to the child's health and development. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial judge's finding that the Department proved by clear and convincing evidence that Saunders's parental rights should be terminated pursuant to Code § 16.1-283(B) and (C) and that the termination of parental rights was in the child's best interests. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.