COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


DEKICIA VAUGHAN

                                              MEMORANDUM OPINION[*]
v.       Record No. 2667-08-2                      PER CURIAM
                                                  MARCH 31, 2009
RICHMOND DEPARTMENT OF
   SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Beverly W. Snukals, Judge

          (H. Pratt Cook, III; Cabell & Cook, on brief), for appellant.

          (Kate D. O'Leary, Senior Assistant City Attorney; Philip C. Strother,
          Guardian *ad litem* for the infant child, on brief), for appellee.


        Dekicia Vaughan appeals the termination of her residual parental rights to her child, T.V.,

pursuant to Code § 16.1-283(C)(2).  She argues the trial court erred in finding that the evidence was

sufficient to prove she was unwilling or unable within a reasonable period of time to remedy

substantially the conditions which led to the placement of her child into foster care.  Upon

reviewing the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

        Code § 16.1-283(C)(2) provides in pertinent part:

            The residual parental rights of a parent . . . may be terminated if
            the court finds, based upon clear and convincing evidence, that it is
            in the best interests of the child and that:

                    *     *     *     *     *     *     *

            The parent or parents, without good cause, have been unwilling or
            unable within a reasonable period of time not to exceed twelve

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created
> the original danger to the child, but on the demonstrated failure of
> the parent to make reasonable changes. Considerably more
> "retrospective in nature," subsection C requires the court to
> determine whether the parent has been unwilling or unable to
> remedy the problems during the period in which he [or she] has
> been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005)

(citation omitted).

The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be

disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan v. Fairfax

County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Peple

v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). We view the evidence in the light

most favorable to the prevailing party below and grant to it all reasonable inferences fairly

deducible therefrom. Id. at 128, 409 S.E.2d at 462.

The evidence proved that T.V. was born on January 15, 2006 and she tested positive for

cocaine and heroin. T.V. and Vaughan were released from the hospital on January 18, 2006 and

Vaughan scheduled a substance abuse assessment at the Richmond Behavioral Health Authority,

but a few days later, Vaughan was arrested on an outstanding warrant for possession of cocaine.

Since T.V.'s father was also incarcerated and there was no one to care for T.V., DSS filed an abuse

and neglect petition and took custody of T.V.

The goal of the initial care plan was return to home. The plan stated that Vaughan was to

obtain and maintain suitable and stable housing, to participate in substance abuse treatment, to

obtain and maintain employment, to complete a psychological and parenting assessment, to participate in individual counseling, and to maintain visitation.

Due to her arrest for the cocaine charge, Vaughan was admitted into the Richmond Circuit Court Adult Drug Control Program (Program). The Program provided Vaughan with individual and group therapy for her substance abuse issues. While she was in the Program, Vaughan served a ten-day sentence for her failure to participate in the Program. Due to her continued failure to attend meetings and her lack of progress, Vaughan was discharged from the Program. Vaughan was then referred to the Richmond Treatment Center where she received methadone for her heroin addiction, but the methadone made Vaughan extremely drowsy, causing her to nod off during visits with T.V. DSS also referred Vaughan to the Behavioral Health Authority and the Richmond Behavioral Awareness Center, which were two programs that could help wean Vaughan off methadone, but Vaughan failed to attend these programs. At the time of the termination hearing, Vaughan had been in methadone treatment for two years and admitted that while on methadone she had used "benzos," which enhanced the effects of methadone.

Vaughan argues she substantially remedied her illegal drug addiction, which was the primary reason that brought T.V. into foster care. We do not agree. Vaughan failed to complete the Program after her drug conviction. Vaughan had been on methadone for two years and failed to attend programs to wean her off the methadone. Vaughan also admitted she added a substance to methadone to enhance its effects. During the thirty-two months T.V. was in foster care, Vaughan failed to complete the substance abuse treatment required by the care plan.

After Vaughan was released from jail, she lived in a two-bedroom house with four adults and two children on Brookfield Street. Vaughan's aunt leased the house, and Vaughan was not on the lease. DSS gave Vaughan the necessary forms for DSS to conduct the required background checks on the adults living in the house, but Vaughan never returned the forms to DSS. Candice

Fleming, a social worker, visited the house, but based upon its size with the number of people living in the house and its condition, Fleming determined it was not a suitable place for T.V. to live. Vaughan was unable to obtain her own housing and Fleming informed Vaughan of the option of moving into a shelter, which would get her into government assisted housing faster, but Vaughan decided against that option. In June 2008, a few months prior to the termination hearing, Vaughan moved to a house leased by an uncle. Only Vaughan and her uncle lived in the house, but there was no evidence Vaughan was on the lease.

Vaughan argues that since she lived for a number of years in the Brookfield Street residence, she proved she had stable housing. Vaughan also contends DSS could have obtained the completed forms authorizing background checks. Assuming without deciding that Vaughan proved she had stable housing because she lived at the Brookfield residence for a number of years and that it was not her responsibility to be sure the forms were completed, Fleming visited the Brookfield residence and found that it was not a suitable residence due to the number of individuals residing in the house and its condition. At the time of the termination hearing, Vaughan was living with an uncle, but she was not on the lease, her uncle did not attend the termination hearing, and there was no proof he was willing and able to assist Vaughan with housing. Vaughan failed to prove she could provide stable and suitable housing for T.V. as required by the care plan.

Vaughan worked at a McDonald's restaurant for a period of time. DSS gave Vaughan money for transportation to various businesses to apply for employment. DSS also arranged to take Vaughan for a referral at the Virginia Employment Commission, but Vaughan was late for the appointment and she never completed the referral. At some point, Vaughan began seasonal work at the baseball stadium. At the time of the termination hearing, Vaughan testified since the baseball season was over and the team left Richmond in September 2008, she was unemployed.

At the time of the termination hearing, Vaughan was unemployed and she blamed her lack of employment on the fact that the baseball season ended and the team left the area. Vaughan knew her job was seasonal and it would end when the baseball season was over, but she did not make any plans for employment after September 2008. Vaughan also failed to cooperate with DSS regarding a referral at the Virginia Employment Commission. Vaughan failed to obtain and maintain stable employment as required by the care plan.

Vaughan failed to attend the initial psychological evaluation, but approximately two weeks prior to the termination hearing, an evaluation was completed. Vaughan completed a parenting class in April 2007 and was attending an additional parenting class at the time of the termination hearing. However, the care plan required Vaughan to participate in individual counseling and she failed to do so. Vaughan maintained visitation with T.V. "for the most part," but she failed to complete programs aimed to address her drug addiction, she failed to find stable and suitable housing, she failed to maintain stable employment, and she failed to attend individual counseling. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that DSS presented clear and convincing evidence Vaughan was unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to the placement of T.V. into foster care. Accordingly, we summarily affirm the decision of the trial court terminating Vaughan's residual parental rights pursuant to Code § 16.1-283(C)(2). See Rule 5A:27.

Affirmed.