COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Beales and Senior Judge Clements

LAURA McGHEE

v.      Record No. 2092-13-2

HENRICO DEPARTMENT
  OF SOCIAL SERVICES                                    MEMORANDUM OPINION[*]
                                                        PER CURIAM
CHARLES McGHEE                                          JULY 29, 2014

v.      Record No. 2093-13-2

HENRICO DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
James Stephen Yoffy, Judge

(Matthew T. Witten, on brief), for appellant Laura McGhee.  Laura
McGhee submitting on brief.

(Brittany E. Auberger; Bowen, Champlin, Foreman, Rockecharlie,
on brief), for appellant Charles McGhee.  Charles McGhee
submitting on brief.

(Ellen R. Fulmer, Assistant County Attorney; Frank G. Uvanni,
Guardian *ad litem* for the minor children, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Laura McGhee (mother) and Charles McGhee (father) appeal orders terminating their

parental rights to their children, R.M. and D.M.  The parents argue the circuit court erred by finding

there was sufficient evidence to terminate their parental rights pursuant to Code § 16.1-283(C)(2).

Mother also contends the circuit court erred in determining that the Henrico Department of Social

Services (HDSS) had made reasonable efforts to reunite the children with the parents and in

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

entering permanency planning orders with the goal of adoption. Upon reviewing the record and briefs of the parties, we conclude the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

On appeal, we view the evidence in the light most favorable to the party prevailing below and grant to it all reasonable inferences fairly deducible therefrom. Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

A court may terminate parental rights if it finds, based upon clear and convincing evidence, it is in the best interests of the child and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The parents have two daughters, R.M., who was born in 1999, and D.M., who was born in 2004. The children were removed from the parents' custody in July 2011 and were initially placed with a relative. In January 2012, the children went into foster care. Prior to the removal of the

children, HDSS had provided the family with in-home services, including parenting direction and support, foster care prevention services, financial support, and substance abuse counseling.

At the circuit court hearing, both mother and father conceded that HDSS had provided reasonable and appropriate rehabilitation services to them with the exception of visitation with the children. Rebecca Silver, a foster care worker with HDSS, testified extensively about the efforts she made with the parents to ensure they had visitation with the children while they were in foster care.

Silver testified she first attempted to meet with the parents in February 2012; however, the parents were not present when Silver went to their residence. She first met the parents in March 2012 at HDSS after the children had their first overnight visit with the parents since they had entered foster care. Silver consulted with the guardian *ad litem* for the children regarding several concerns she had after this visitation. She and the guardian *ad litem* decided the parents would have supervised visitation with the children for two hours every other week with the goal of decreasing the supervised time and allowing the parents to have increased unsupervised visitation.

The first scheduled supervised visitation was canceled because the parents failed to contact Silver to confirm a location where they wanted to conduct the visitation. The parents had supervised visitation with the children on March 19, 2012, April 2, 2012, and April 10, 2012. On April 16, 2012, only father had supervised visitation because mother failed to attend. The next day, father informed Silver that mother was missing. Silver attempted to contact mother for a period of time, but Silver was unable to reach mother. Silver decided to suspend all visitation until she could meet with the parents again.

On May 7, 2012, the parents met with Silver and stated they were working on their relationship, they wanted to re-establish visitation with the children, and they wanted to work together to gain custody of the children. Mother canceled the next scheduled visit, which was set for May 14, 2012. Mother told Silver father had been missing for days and she did not know where

he was. On May 18, 2012, father contacted Silver. He stated he was never missing and he did not know the visitation had been canceled.

Silver began to have difficulty reaching either parent, and they would not return Silver's messages. Silver saw mother in court and mother agreed to meet with Silver on June 7, 2012, but mother later canceled the meeting. The next visitation was held on August 10, 2012. Silver stated the children competed for the attention of the parents and the parents were occasionally unable to "redirect" some of their behavior appropriately.

On August 24, 2012, the parents again had supervised visitation with the children. Silver testified she heard father tell one of the children that she needed to act "better" during the visits because he did not want to have to spend the entire time parenting them. Silver also stated father was not receptive to parenting suggestions. Sometime after that visit, father was incarcerated and only mother was present at the August 29, 2012 visitation. Silver noted that R.M. often had a negative reaction to having contact with mother.

In September 2012, the parents again became unresponsive to Silver's attempts to communicate. Silver stated the parents moved frequently and were both incarcerated for periods of time. Mother also told Silver she lost her phone or said her phone did not have any available minutes for her to call Silver. Silver continued to try to schedule visits. She had to cancel one visit because mother was slurring her words and had several outstanding capiases. Silver did not want to expose the children to mother's possible arrest.

Silver attempted to contact both parents and the relatives of the parents, but she was unable to reach them from September through December 2012. On January 11, 2013, Silver communicated with the parents, who were both incarcerated, and they told Silver they wanted to obtain custody of their children. Mother indicated she would be released from incarceration the

next week and she would then contact Silver. However, mother failed to contact Silver after she was released.

Silver testified HDSS was requesting a change in goal in the foster care plans to adoption because "really nothing ha[d] changed" for the parents although HDSS had worked with the family for two and one-half years. The parents still lacked adequate housing and a stable income, they were often incarcerated, and the children needed structure and stability. Silver stated the children have thrived while in foster care. They are performing well in school, and they feel "safe." Silver testified the children indicated they are ready for this matter to be concluded and they want to move on with their lives.

Both parents were incarcerated at the time of the circuit court hearing held on September 17, 2013. On the day before the hearing, mother told Silver she planned to reside with a friend when she was released from incarceration. Silver testified father told her that he planned to be released from prison in the fall and he would like one more month to show that he is able to "finish everything." Silver also stated father said that if he was unable to improve his circumstances within a few months, then he would relinquish his parental rights because he wanted stability for his children.

The guardian *ad litem* advised the circuit court that the children are doing well in foster care and both would like to be adopted by the foster care family. He stated the children understand the legal implications involved in this matter and they want to move forward with their lives.

"'In matters of child welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The circuit court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on

appeal unless plainly wrong or without evidence to support it." <u>Peple v. Peple</u>, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Mother and father assert HDSS did not provide sufficient visitation opportunities with the children. However, the circuit court found that the parents, not HDSS, caused the difficulties with the visitation schedule. Mother often canceled arranged visits, then she would either fail to reschedule the visitation or she could not be reached in order to address the matter. Indeed, the record shows Silver repeatedly endeavored to communicate with both parents in order to discuss future visitation. However, she was often unable to find the parents. In addition, both parents were incarcerated for various periods of time while the children were in foster care. Furthermore, as the circuit court noted, evidence was presented that one of the children had negative reactions to the visitations, particularly concerning her interaction with mother.

Therefore, based upon a review of the circumstances in this case, the evidence showed HDSS provided reasonable and appropriate services to mother and father and there was clear and convincing evidence that they were unwilling or unable to remedy the problems during the period in which they were offered services, including visitation. Accordingly, there was sufficient evidence supporting the circuit court's decision to terminate the parental rights of mother and father pursuant to Code § 16.1-283(C)(2).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold."

<u>Toms</u>, 46 Va. App. at 267-68, 616 S.E.2d at 770 (citations omitted).

Mother also asserts the circuit court erred in entering permanency planning orders with the goal of adoption. "A preponderance-of-the-evidence standard governs judicial review of" foster care plans. Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). The record supports the circuit court's decision to approve the goal of adoption in the permanency planning orders. The parents had made no progress in improving their circumstances despite having received services from HDSS for over two and one-half years. The children are thriving in foster care, and they expressed the desire to move on with their lives. Furthermore, the children have been in foster care for more than two years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

For the foregoing reasons, the circuit court's rulings are affirmed.

Affirmed.