COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Willis


MARY JO SPAIN

v.      Record No. 1951-07-3

ROANOKE COUNTY DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 12, 2008


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Robert P. Doherty, Jr., Judge

(Valeria L. Cook, on brief), for appellant.  Appellant submitting on
brief.

(Joseph B. Obenshain, Senior Assistant County Attorney, on brief),
for appellee.  Appellee submitting on brief.

(Ellen S. Weinman, on brief), Guardian *ad litem* for the minor
child.  Guardian *ad litem* submitting on brief.


Mary Jo Spain, mother, appeals the trial court's decision, dated July 16, 2007, terminating

her parental rights to her child pursuant to Code § 16.1-283(C).  Upon reviewing the record and

briefs of the parties, we affirm the trial court's decision.

Background

We review the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence proved

that Spain's child was born July 4, 2000.  Prior to the child's removal from Spain's home, the

Department of Social Services (DSS) had provided in-home services to Spain and her child.  Spain

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

received day care services, and participated in programs where she received Medicaid services, food stamp services, and transportation assistance. Spain was invited to participate in domestic violence group classes and parenting classes. Spain refused these classes but did complete parenting classes for parents with children with ADD/ADHD.

Deborah McIntyre, a family therapist, noted that there was no structure in the home, the child was unsupervised, Spain did not always know where her child was, and that the child had taken an overdose of his medicine while in Spain's care. Despite the services provided, the situation had worsened. Spain was unable to manage her child, and McIntyre notified DSS. The child was removed from Spain's home by emergency order on July 6, 2005.

Samantha Hinton Burnette, the DSS caseworker, testified that after the child was removed from Spain's home, the initial goal was "return home." DSS provided services, including counseling and parenting classes, to attain that goal. Supervised visitation was arranged, but the child regressed after each visit with Spain. After visiting with Spain, the child seriously misbehaved, began bedwetting, and became overly aggressive at school. When the visitations were stopped, the child's behavior improved. Telephone visitations were arranged, but these conversations continually focused on Spain's needs. The goal was changed to "adoption" after the child had been in foster care for fifteen months and Spain showed no progress in eliminating the problems that caused the removal. Burnette testified that DSS provided all the services it could, and acknowledged that Spain tried, but was unable to provide her child with consistency, structure, supervision, and safety.

Dr. Mukesh Patel evaluated Spain on July 18, 2006. After assessing Spain, Dr. Patel expressed "definite, serious concerns about her skills and abilities to truly parent the young child" and noted that Spain was "scattered and has difficulties with focusing and concentration,

cooperatively and appropriately comprehending the situation." Dr. Patel testified that interaction between Spain and her child should be monitored.

Sharon Brammer testified as an expert in parent-child attachment, and stated that the child did not have a "secure" attachment with Spain. Brammer stated that because an "insecure" attachment existed between Spain and her child, the child would be at "high risk" if placed with Spain. Brammer stated that Spain would need years of psychotherapy before there would be any possibility of Spain being capable of parenting her child. Brammer stated that it was not in the child's best interests to be returned to Spain.

Dr. Samuel P. Rogers, Jr. testified on Spain's behalf and stated that he did not think Spain had all the problems that DSS contends and that psychologically, there is no reason why she cannot parent her child. The trial judge, in his ruling, specifically stated that he discounted Dr. Rogers's testimony. Spain acknowledged at the termination hearing that she would continue to need help in raising her child should he live with her.

## Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation

- 3 -

of the child's foster care placement," and (3) despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." "[T]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

DSS proved by clear and convincing evidence that termination of Spain's parental rights was in her child's best interests. Expert testimony was presented that Spain was unable to care for her child and that the child's behavior improved when visitation with Spain was discontinued. The child had been in foster care for almost two years and, despite being provided numerous services, Spain remained unable to "substantially remedy" the conditions that led to her child's foster care and remained unable to provide a safe, secure home for her child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Even if mother complied with the DSS requirements, the evidence proved that she was unable to substantially remedy the conditions that led to foster care placement. The attachment disorder had not abated, and there was no evidence it would abate within a reasonable time frame.

The record supports the trial court's finding that DSS proved by clear and convincing evidence that Spain's parental rights should be terminated pursuant to Code § 16.1-283(C)(2) and that the termination of Spain's parental rights was in her child's best interests. Accordingly, we affirm the trial court's judgment.

Affirmed.

- 4 -