COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


KELLYN WILSON AND BOBBY JOE WILSON
                                                            MEMORANDUM OPINION[*]
v.        Record No. 2477-10-1                                     PER CURIAM
                                                                 APRIL 12, 2011
JAMES CITY COUNTY DIVISION
   OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Samuel T. Powell, Judge

(Bill H. McKinnon; Mara Medvin Matthews; Montgomery,
Kelley & McKinnon, on brief), for appellants.

(Leo P. Rogers; Angela M. King; LeeAnn N. Barnes, Guardian *ad
litem* for the infant children; County Attorney's Office, on brief),
for appellee.


        Kellyn Wilson and Bobby Joe Wilson appeal the termination of their parental rights under

Code § 16.1-283(C)(2) of their children, J.W., born on October 18, 2005, and D.W., born on July 2,

2008.  Appellants argue the children were removed due to a lack of housing and a lack of income,

but they rectified both problems prior to the date of the continued termination hearing.  Upon

reviewing the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of Human

Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In October 2008, Tina Sawyer, a social worker with the James City County Child Protective Services, became aware that appellants and the children were living in hotels with the assistance of local churches and the Salvation Army, but the assistance was no longer available. Sawyer learned that the Chesapeake Department of Social Services had contact with the family in July 2007, the York County Department of Social Services had contact with the family in July 2008, and the City of Williamsburg Social Services assisted the family during this same time period. On October 10, 2008, Sawyer located appellants and the children at a library and learned that appellants and the children had spent the previous night inside a Wal-Mart. J.W., who is autistic, was enrolled in but not attending a special program. Sawyer was concerned about J.W.'s need for services. Sawyer investigated the possibility of family members taking custody of the children, but no one was able to do so.[1]

After Sawyer met with appellants at the library, appellants voluntarily agreed that respite placement was in the best interests of their children. During the meeting, father disappeared for a period of time and mother signed the appropriate paperwork. Sawyer testified that in October 2008, D.W. was three months old and had a severe diaper rash and J.W. was throwing himself on the floor and hitting his head on the floor. A few days after the children were placed in respite care, appellants met with Sawyer. Appellants agreed that they needed to obtain stable housing and employment. At the end of October 2008, appellants had not obtained stable housing and employment and they agreed that foster care was the best option for the children.

J.W.'s foster mother testified she was a special education teacher of preschool children. She testified when she took custody of J.W., he frequently banged his head on the floor, he scavenged food from the trashcan, and he was unable to communicate his needs. The foster mother testified

---

[1] Appellants stayed with family members in the past, but were asked to leave because they failed to obtain employment or housing.

J.W. was three years old when she took custody, but he was functioning at approximately eighteen months. At the time of the termination hearing, J.W. was speaking in phrases, he would speak spontaneously, he was no longer scavenging for food, and he was more social. When the foster mother took custody of J.W., he was not up-to-date on his immunizations, but he was at the time of the termination hearing.

D.W.'s foster mother testified when she took custody of D.W., he had skin rashes and a milk protein allergy. The foster mother testified D.W. has several food allergies, is asthmatic, and requires nebulizer treatments throughout the day and night for his asthma. The foster mother testified D.W. has never slept through an entire night, and it takes approximately one hour to settle him down for bed. The foster mother must also apply prescription creams to treat D.W.'s skin rashes. When the foster mother took custody of D.W., he had not seen a doctor since birth but, at the time of the termination hearing, he was up-to-date on his immunizations and he had seen several medical care providers for his medial needs. D.W. was also showing signs of autism, but had not been so diagnosed.

Felicia Tyler, a social worker with James City County Division of Social Services (DSS), referred appellants for a parenting capacity evaluation to help determine what services would benefit them. Tyler referred appellants for a psychiatric evaluation, which they completed. Tyler referred appellants to James City County Housing Office for assistance, but in April 2009, mother informed Tyler that they were living with her father and they had a permanent address. Tyler testified appellants had a long history of unemployment and father reported he was unable to work due to a brain condition. Tyler referred father to a vocation and rehabilitation center, but he failed to attend. Tyler testified father attempted to secure disability benefits, but his application was denied for failing to provide the Social Security Administration with the necessary information.

Appellants were required to attend parenting classes for special needs children, and Tyler referred them to a program in Hampton, but in July 2009, Tyler learned that to be admitted into the program, the children needed to be living with the parents. Shortly thereafter, mother told Tyler about a parenting program for autistic children in the Tidewater area and Tyler obtained information about the program. Tyler provided the information to mother. Mother never attended the program in the Tidewater area. Tyler testified mother failed to inform her the program was not for children with special needs until one week prior to the March 22, 2010 termination hearing. Tyler testified DSS also provided transportation for appellants and helped appellants with medical bills and prescription medications.

On February 21, 2010, mother informed Tyler that appellants were living in a hotel and mother started working at the front desk at the hotel the previous night. Mother explained appellants moved out of her father's home due to an altercation. Tyler testified that appellants were consistent with their visits with the children until December 2009, but since that time they have missed several visits.

The trial court held the termination hearing on March 22, 2010, but father left the courtroom prior to the beginning of testimony. At the conclusion of Tyler's testimony, the trial judge continued the hearing to November 2, 2010 to determine the stability of mother's employment and of appellants' housing. The trial judge wanted DSS to investigate the hotel to determine if it was an appropriate place for children and to determine if mother could obtain training for parenting an autistic child.

At the continued hearing, mother testified she was still employed at the hotel and appellants were living in the hotel, but she had just received Section 8 housing and was planning on looking at a residence later that day. Mother testified she obtained a degree in medical assisting, but she did not plan to pursue a career in that field and she intended to pursue a career in law enforcement or

obtain a law degree. Mother had not taken any steps, however, to pursue a career in law enforcement. Mother testified she continued to take medication for mental health issues and was in the process of finding a new therapist. She claimed father would care for the children while she worked and father's application for disability benefits was in the appeal process. Mother testified father had to attend anger management classes after a conviction arising from the altercation at her father's house. She conceded father still became angry at times, but she "redirects" him and his anger subsides. Mother asserted appellants attended parenting classes and did self-study on caring for children with special needs.

At the conclusion of the continued termination hearing, the trial judge found that father's action of leaving the prior termination hearing and his demeanor while he listened to the evidence at the continued hearing showed a "lack of stability" and that father appeared "to be almost disengaged with what we're doing." The trial judge stated that mother's plan for father to care for the children while she worked was not realistic because father was "incapable of taking care of the children with special needs." The trial judge noted mother attended programs and furthered her education, but stated "just attending programs doesn't make you a better parent." The trial judge found that living in a hotel was not a basis for terminating mother's parental rights, but, based upon the totality of the circumstances and mother's plan to have father care for the children while she worked, the evidence was clear and convincing that appellants were unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to the placement of the children in foster care.

Code § 16.1-283(C)(2) provides that the residual parental rights may be terminated if it is in the best interests of the child and

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement notwithstanding the reasonable

and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Decisions to terminate parental rights under Code § 16.1-283(C)

hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he [or she] has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (citation omitted).

"'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

We cannot say that the trial judge erred in finding that the evidence was clear and convincing that appellants were unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to the placement of their children in foster care.

Following a history of housing and employment instability in other jurisdictions, DSS became involved with the family in October 2008. At the time of the November 2010 hearing, the children have been in foster care for more than two years. At the time of the March 2010 hearing, mother had been employed for a short period of time as a desk clerk at the hotel and appellants were living in the hotel. The trial judge continued the hearing for approximately eight months to determine appellants' stability with housing and employment. At the time of the November 2010 hearing, mother had obtained a degree in medical assisting, but she did not plan on obtaining

employment in the field and she planned on pursuing a career in law enforcement. Mother had done nothing to pursue a law enforcement career. At the time of the November 2010 hearing, mother was still working at the hotel, but she planned for father to care for the children while she worked. Based upon the evidence at the hearings, father's action of voluntarily leaving the hearing in March 2010, and his demeanor at the continued hearing in November 2010, the trial judge found that father lacked stability and was incapable of caring for the children. Although mother had obtained assistance for Section 8 housing sometime after the March 2010 hearing, appellants had not obtained the housing and they continued to live in a hotel. DSS attempted to find a parenting program for children with special needs, and mother gave DSS information about a program. DSS provided the contact information to mother in July 2009, and it was not until March 2010 that mother informed DSS that the program was not for children with special needs. Although appellants attended parenting classes and did self-study on caring for an autistic child, they never applied their knowledge of caring for children with special needs because, prior to March 2010, appellants' visits were with the children at the children's prechool. The testimony by the foster mothers proved that the children's needs are great. In addition to the children's needs, father continues to have anger issues requiring mother's time and attention to "redirect" his behavior. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Serv., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Based upon the foregoing, the trial court did not err in terminating appellants' parental rights pursuant to Code § 16.1-283(C)(2).

Accordingly, we summarily affirm the trial judge's decision terminating appellants' parental rights pursuant to Code § 16.1-283(C)(2).

Affirmed.