COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Huff and Senior Judge Clements


FAYE FERRELL

                                                    MEMORANDUM OPINION[*]
v.        Record No. 1705-11-4                             PER CURIAM
                                                        FEBRUARY 14, 2012
ALEXANDRIA DEPARTMENT OF
 COMMUNITY AND HUMAN SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            Lisa B. Kemler, Judge

              (Douglas A. Steinberg, on brief), for appellant.

              (James Banks; Mary Elliott O'Donnell; Wahaj Memon; Ellen Dague,
              Guardian *ad litem* for the minor children; Office of the City
              Attorney, on brief), for appellee.


      Faye Ferrell (mother) appeals from an order terminating her parental rights to her children.

Mother argues that the trial court erred by admitting hearsay statements of the child regarding

alleged sex abuse under Code § 63.2-1522, and specifically that (1) the testimony did not meet the

indicia of reliability and safeguards required under the statute and (2) the testimony was testimonial

hearsay as defined by Crawford v. Washington, 541 U.S. 36 (2004).  Mother also argues that the

trial court erred in terminating her parental rights under Code § 16.1-283(C)(2) when she made

substantial progress towards elimination of the conditions which led to or required continuation of

the foster care placement.  Upon reviewing the record and briefs of the parties, we conclude that

this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.

See Rule 5A:27.

_____

      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Mother has three children who are the subject of this appeal.[1] The Alexandria Department of Community and Human Services (the Department) initially became involved with mother in January 2005. At the time, mother had one daughter, T.F. The Department removed T.F. from mother's care because mother was homeless and unable to care for T.F. The Department assisted mother with housing, counseling, and employment. In June 2006, S.F. was born and went home with mother. In March 2007, the Department returned T.F. to mother's custody because she was able to maintain housing, had completed individual counseling, and had no further domestic violence incidents with T.F.'s father.[2]

In November 2009, the Department filed abuse and neglect petitions related to T.F. and S.F. and removed them from mother's care. At the time, mother was sad and overwhelmed. The Department was concerned about the stability of mother's housing, the impending cut-off of utilities, and the amount of food in the house. Mother acknowledged that she was involved in domestic violence incidents with the father of her unborn child. Mother also tested positive for marijuana. In December 2009, N.F. was born and went home with mother.

A couple of weeks after N.F.'s birth, mother told the Department that she was not going to stop using marijuana and that she was not going to participate in substance abuse testing or counseling. Due to her statements, the Department removed N.F. from mother's care.

---

[1] Since the children are minors, we will refer to them by their initials, T.F., S.F., and N.F. Mother gave birth to a fourth child after the juvenile and domestic relations district court terminated her parental rights to T.F., S.F., and N.F. That child is not a subject of this appeal.

[2] Mother and T.F.'s father were involved in a domestic violence incident in January 2006.

- 2 -

The Department provided mother with a home-based worker to assist her with maintaining the home and other daily skills, as well as parenting skills. Mother also received budgeting assistance from the Department.

The Department referred mother for a substance abuse evaluation and a psychological assessment. In April 2010, mother completed a psychological evaluation, which revealed that she had inadequate coping skills, low self-esteem, difficulty trusting others, and resistance to treatment.

The Department also referred mother to Drug Court, and mother participated in the program from spring 2010 to May 2011.

On August 2, 2010, the Department placed T.F., S.F., and N.F. back in mother's care.[3] Neither T.F.'s father nor N.F.'s father was permitted in the home. The Department continued to provide mother with services to assist her with parenting skills. T.F. and S.F. received individual therapy to address their sexualized behavior, which they began exhibiting after returning home.

During the fall of 2010, the Department became concerned with mother's ability to safely parent and provide for the children. T.F. began reporting to her teacher that she was being "whupped" with a belt at home, and S.F. reported to the CASA worker that she was hit with a belt as well. The CASA worker also reported that mother was not adequately supervising the children during this time period and there was concern about the cleanliness of the home. In addition, there were concerns about N.F.'s growth, and mother's refusal to take the child for a follow-up appointment with the doctor.

In January 2011, complaints were made to Child Protective Services (CPS) involving allegations of sexual abuse in the home. On January 27, 2011, the Department removed T.F., S.F., and N.F. from the home. The Department had T.F. evaluated by a licensed clinical social

---

[3] The Department retained legal custody of the children.

worker who specialized in mental health assessments of abused children. T.F. reported being sexually abused and physically abused. Both T.F. and S.F. reported men staying in the home with mother.[4]

Considering the history of the case, the Department sought to terminate mother's parental rights, which the juvenile and domestic relations district court approved. Mother appealed, and after hearing all of the evidence and argument, the trial court terminated mother's parental rights to T.F. and S.F. under Code § 16.1-283(C)(2). The trial court terminated mother's parental rights to N.F. under Code § 16.1-283(B) and 16.1-283(C)(2). This appeal followed.

ANALYSIS

Admissibility of the child's statements under Code § 63.2-1522

Mother argues that the trial court erred in admitting T.F.'s statements about sexual abuse under Code § 63.2-1522. She contends the testimony did not meet the indicia of reliability and safeguards required under Code § 63.2-1522.

Under Code § 63.2-1522(A), "an out-of-court statement made by a child . . . describing any act of a sexual nature performed with or on the child by another . . . may be admissible in evidence if the requirements of [Code § 63.2-1522(B)] are met." Code § 63.2-1522(B) provides that the out-of-court statement may be admitted if the child is unavailable to testify, Code § 63.2-1522(B)(1), and the "statement is shown to possess particularized guarantees of trustworthiness and reliability," Code § 63.2-1522(B)(2). In determining whether the child's statement possesses the necessary "particularized guarantees of trustworthiness and reliability,"

---

[4] Although one of the conditions for the children being returned to mother in 2010 was that neither T.F.'s father nor N.F.'s father live with mother and the children, it appears that one or both of them were living in the home when the children were present. T.F. reported being abused by her "dad" and "Percy," as well as her mother. S.F. talked about different men living in the house and referred to them as "Daddy," "Ta," "P," and "[N.'s] Daddy."

the trial court must consider the twelve factors listed in Code § 63.2-1522(D).[5]  Furthermore, the

trial court is required to "support with findings on the record . . . any rulings pertaining to the

child's unavailability and the trustworthiness and reliability of the out-of-court statement."  Code

§ 63.2-1522(E).

---

[5] The twelve factors listed in Code § 63.2-1522(D) are:

1. The child's personal knowledge of the event;

2. The age and maturity of the child;

3. Certainty that the statement was made, including the credibility of the person testifying about the statement and any apparent motive such person may have to falsify or distort the event including bias, corruption or coercion;

4. Any apparent motive the child may have to falsify or distort the event, including bias, corruption, or coercion;

5. The timing of the child's statement;

6. Whether more than one person heard the statement;

7. Whether the child was suffering pain or distress when making the statement;

8. Whether the child's age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

9. Whether the statement has internal consistency or coherence, and uses terminology appropriate to the child's age;

10. Whether the statement is spontaneous or directly responsive to questions;

11. Whether the statement is responsive to suggestive or leading questions; and

12. Whether extrinsic evidence exists to show the defendant's opportunity to commit the act complained of in the child's statement.

The Department offered the testimony of Marcella Rustioni, who is a licensed clinical social worker. Rustioni evaluated T.F. and testified about T.F.'s statements regarding the sexual abuse allegations against mother and N.F.'s father. The Department questioned Rustioni at length about her qualifications,[6] her forensic evaluation of T.F., her procedures, and T.F.'s development, including T.F.'s ability to recognize and tell the truth. Rustioni testified that T.F. did not have the capacity to testify in front of her mother. T.F. was afraid of her mother and sometimes did not want to see her. She also was afraid of "Mr. Percy" and did not want to see him.[7]

When issuing its ruling to allow the statements, the trial court stated:

> So I think based on the testimony that I heard from Ms. Rustioni and everything that she went through in terms of the assessment that she did, the steps conducted in the extensive forensic interview and the various behavioral measures, including the child behavior checklist, the child sexual behavior inventory and the trauma symptom inventory, that the requirements and criteria of the statute . . . have been met.

Mother questions the trial court's ruling on T.F.'s availability; however, mother concedes that there was testimony regarding T.F.'s fear about testifying in front of her mother and N.F.'s father. The trial court noted that there was "significant testimony that the child has expressed a fear or demonstrated a fear of talking about these difficult subject matters in the presence of the mother or even fear that the mother would find out that she was talking about these things." The trial court did not err in ruling that T.F. was unavailable to testify.

Next, mother questions the trustworthiness and reliability of T.F.'s statements because of some internal inconsistency in T.F.'s statements, including her allegation of a third abuser who

---

[6] The trial court designated Rustioni an expert in the fields of forensic interviewing, memory suggestibility, and child development.

[7] "Mr. Percy" was later identified as N.F.'s father.

touched her inappropriately on the playground. Rustioni, however, testified that T.F.'s allegations regarding mother and N.F.'s father were consistent.

Accordingly, the trial court did not err in admitting T.F.'s statements under Code § 63.2-1522.[8]

### Admissibility of the child's statements under *Crawford v. Washington*

Mother next argues that the trial court erred in admitting T.F.'s statements because Rustioni's testimony was testimonial hearsay as defined by Crawford v. Washington, 541 U.S. 36 (2004).

In Crawford, the Supreme Court of the United States analyzed the Sixth Amendment and a criminal defendant's right to confront his accusers and held that the Confrontation Clause applies to testimonial hearsay only. Id. at 68-69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").

We reject mother's argument that Rustioni's testimony was testimonial hearsay under Crawford. The ruling in Crawford applies to criminal cases, not civil cases. Crawford refers to the Sixth Amendment, which states, "In all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (Emphasis added.)

Furthermore, we point to Code § 63.2-1522, which specifically allows the admission of a child's out-of-court statement so long as the child is unavailable and her statement "possesses

---

[8] We note that the trial court did not place much weight on T.F.'s statements. In issuing its ruling, the trial court stated,

> Those [sexual abuse] allegations and the testimony pertaining to them I have to say had very little bearing on the Court's decision. In the Court's opinion the evidence that was presented, although unrebutted, was just that, allegations. And at this point I don't deem those allegations to be proved to the degree that I would use them as a basis for making this ruling.

particularized guarantees of trustworthiness and reliability." As noted above, the trial court did not err in admitting the child's statements.

Sufficiency of the evidence

Mother asserts that the trial court erred in finding that the evidence was sufficient to terminate her parental rights under Code § 16.1-283(C)(2) because she made substantial progress toward eliminating the conditions that led to or required the children's placement in foster care.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department had been involved with this family since 2005. At the time of the hearing, T.F. had been in foster care for fifty-one out of her eighty-nine months; S.F. had been in foster care for fifteen out of her sixty-one months; and N.F. had been in foster care for thirteen out of her nineteen months. The Department removed T.F. from her mother's care three times.

- 8 -

Although mother made some progress, such as completion of the Drug Court program, she was unable to meet her children's needs. Mother did not follow up with necessary medical care for N.F. when the child had growth issues.[9] She could not adequately supervise her children. She did not recognize and understand the children's emotional and psychological needs.

The Department provided numerous services for mother over the years, but she still struggled with daily skills and her psychological issues. Mother had significant psychological issues, including depression, mood stability, and impulsive behaviors. She did not want to take medication for her psychological issues and stopped participating in therapy in May 2011. In addition, at the time of the trial, mother continued to struggle with budgeting issues, daily life skills, and maintaining a clean residence.

Citing the length of time that the children had been in foster care, the extensive services provided to mother, and the children's need for closure, stability, and a safe home, the trial court terminated mother's parental rights to T.F., S.F., and N.F.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The Department presented sufficient evidence to support the termination of mother's parental rights, and the trial court did not err in doing so.

---

[9] As an infant, N.F. was at the ninety-fifth percentile at weight and then dropped to eighty percent. After N.F. started living with her mother again, N.F.'s weight dropped to the twenty-second percentile. Upon returning to foster care, N.F. gained weight, and by the time of the trial, she was past the fiftieth percentile for weight.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>