COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and Senior Judge Annunziata

JOHN JUNIOR MARTINEZ, SR.

v.     Record No. 0739-13-1

CITY OF PORTSMOUTH
 DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 24, 2013

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge[1]

(Barrett R. Richardson; Richardson and Rosenberg, LLC, on brief),
for appellant.

(George M. Willson, City Attorney; Shelia C. Riddick, Assistant
City Attorney; Alvin M. Whitley, Guardian *ad litem* for the minor
child, on brief), for appellee.


John Junior Martinez, Sr., father, appeals a circuit court order terminating his residual

parental rights to his child pursuant to Code § 16.1-283(C)(1) and (2).  On appeal, he argues the

trial court erred by terminating his parental rights where the Portsmouth Department of Social

Services (PDSS) failed to prove by clear and convincing evidence he was responsible for the

conditions leading to the child's placement in foster care and where he substantially complied

with the services required of him.  He also contends the trial court erred by approving a

permanency plan of adoption where PDSS did not prove he failed to complete the services

---

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Cales presided over the March 11, 2013 hearing and ruled that father's parental
rights were terminated and approved the permanency planning goal of adoption.  The final orders
in the case were signed by Judge Johnny E. Morrison.

recommended. Upon reviewing the record and briefs of the parties, we conclude this appeal is without merit. Accordingly, we affirm the decision of the trial court. See Rule 5A:27.

Background

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Felicia Brewer, a social worker for PDSS, testified that in April 2010, father's six-year-old child came into the custody and care of PDSS based on a complaint of physical abuse. At the time of the removal, father stated he was "about to lose it at any time." Brewer testified that as they investigated the matter, father was "very irate." At the time of the removal, the child was living with father, father's mother and her husband, and father's girlfriend. In July 2010, the juvenile and domestic relations district court adjudicated the child as abused or neglected within the meaning of Code § 16.1-228.

Michelle Sherrod, a senior social worker with PDSS, testified she became involved in the case in September 2011. She stated PDSS recommended that father complete a parenting capacity evaluation, parenting classes, domestic violence classes, anger management, and therapy with an anger management component. PDSS provided father with a listing of housing information and job referral services.

Although the initial goal of the 2010 foster care plan was to return the child to father's custody, the goal was changed to relative placement in 2011 based on father's need for additional, "more intense therapy." Sherrod stated that when PDSS offered father the additional therapy, he became upset and he stated he had done everything that was asked of him. Father refused to participate in the additional therapy. Father completed the parenting classes, the parenting capacity

- 2 -

evaluation, and the domestic violence classes. However, Sherrod opined that father did not benefit from the services he had engaged in.

Sherrod also testified concerning the investigation of possible relative placement of the child. Two of mother's relatives did not follow through with the process, and another person was not approved for placement by PDSS. The goal of the foster care plan was changed to adoption.

Sherrod testified PDSS arranged for two visitations between father, the child, and their therapists, but father failed to attend either visitation, stating he had work obligations. In addition, in 2012 father was convicted of an offense involving domestic violence. Also during this time period, father was convicted of possession with intent to distribute marijuana and driving while under the influence. He has had at least five addresses and eight jobs since the child has been in foster care. Father asked Sherrod about the welfare of the child on only one occasion.

Sherrod testified that adoption would serve the child's best interests because he had been in foster care for almost three years, he had been with the same family since 2011, he would be free from chaos, inconsistency, and abuse, and he is stable with the current foster care family where he is flourishing and progressing. Sherrod stated the child has been diagnosed with attention and mood disorders and he receives the appropriate medication for these conditions.

Melvina Snead, the court-appointed special advocate, testified that her recommendations for the custody of the child evolved over time from return to home to adoption based on the fact that father had not benefitted from the services provided, "mainly anger management." She also stated father cursed at her, was "hostile all the time," and blamed the agency for "everything that was happening to him." Father told Snead his therapist "did nothing." Father also failed to maintain stable housing and employment. Father was charged with trespassing at an apartment complex and was barred from that complex for one year.

The child's court-appointed special advocate testified the child has become more relaxed over the years, is more focused, is flourishing in school, participates in sports, and is doing well with the foster care family. She also testified father told her he was going to therapy "just to get it over with."

Father testified he maintained employment, housing, and completed parenting classes and domestic violence classes. He stated he participated in anger management classes and therapy. Father testified he stopped attending therapy because of a lack of funding from PDSS. Father stated he benefitted from the parenting capacity evaluation and learned effective techniques regarding parenting. Father acknowledged that the last time he saw his son was in 2010. He also acknowledged the child was removed from his custody due to allegations that he struck the child.

Sherrod testified on rebuttal that PDSS notified father by letter that it would provide funding for his continued therapy.

The trial court terminated father's parental rights and ruled PDSS "should proceed" with the permanency plan. Father appealed the decisions to this Court.

Analysis

"'In matters of child welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

A court may terminate parental rights if it finds, based upon clear and convincing evidence, it is in the best interests of the child and that:

> The parent or parents have, without good cause, failed to maintain
> continuing contact with and to provide or substantially plan for the

- 4 -

future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

A court may also terminate parental rights if it finds, based upon clear and convincing evidence, it is in the best interests of the child and that:

The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005)

(quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580

S.E.2d 463, 466 (2003)).

The trial court found that termination of father's parental rights was in the best interests

of the child. The court further found that father "has made some attempts," but is not capable of

"carrying through with these attempts." The trial court noted that father did not participate in the

two opportunities he was given to have visitation with his son. Indeed, father had no contact

with the child since he was removed from father's custody. Furthermore, father did not complete

the recommended therapy and he told a CASA worker that he attended therapy "just to get it over with."  Father completed some of the services and programs recommended by PDSS, but he failed to maintain continuing contact with and to provide or substantially plan for the future of the child for more than six months after the child's placement in foster care.  See Code § 16.1-283(C)(1).

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'"  Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

In addition, father did not demonstrate his ability "within a reasonable period of time . . . to remedy substantially the conditions which led to or required continuation of the child's foster placement, notwithstanding the reasonable and appropriate efforts of [PDSS]."  Code § 16.1-283(C)(2).  Father did not maintain stable employment and housing.  He still had unresolved anger issues for which he stopped getting treatment, and he committed criminal offenses while the child was in foster care.

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past."  "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'"  "No one can divine with any assurance the future course of human events.  Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold."

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770 (citations omitted).

Furthermore, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The child has been in foster care for almost three years and is thriving in school and with the foster care family. The record fully supports the trial court's finding that clear and convincing evidence proved the best interests of the child would be served by terminating the parental rights of father pursuant to Code § 16.1-283(C)(1) and 16.1-283(C)(2).

Father also contends the trial court erred in approving the change in goal of the foster care plan to adoption. "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision." Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). It logically follows, therefore, that our conclusion that the trial court did not err in terminating father's parental rights under the more stringent clear-and-convincing-evidence standard set forth in Code § 16.1-283(C) "necessarily subsumes" this aspect of father's appeal. Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3.

Accordingly, we summarily affirm the judgment of the trial court.

Affirmed.